NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0692n.06

No. 09-5827

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 10, 2010
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff-Appellee,　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　ON　APPEAL　FROM　THE　UNITED
　　　　　　　　　　　　　　　　　　)　STATES　DISTRICT　COURT　FOR　THE
RONALD URIUS CLARK,　　　　　　　　)　MIDDLE DISTRICT OF TENNESSEE
　　　　　　　　　　　　　　　　　　)
　　　　Defendant-Appellant.　　　　　　)

Before:  MOORE, SUTTON and FRIEDMAN,[*] Circuit Judges.

SUTTON, Circuit Judge.  A grand jury indicted Ronald Clark for being a felon in possession of a firearm, and he pled guilty to the charge.  On appeal, he challenges one feature of his 77-month sentence, a four-level enhancement in his advisory guidelines range for possessing the firearm "in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6).  We affirm.

I.

On January 18, 2008, less than four months into a five-year term of supervised release for aggravated assault, Ronald Clark got hold of a .357 Magnum revolver from his friend Kiki.  That same day, Clark walked to the D.B. Todd Market with Kiki and their friend Mario "to get a cigar."  R.44 at 25.  On the way, he stopped behind a building, pulled back the hammer of the revolver and

_____

[*]Daniel M. Friedman, United States Court of Appeals for the Federal Circuit, sitting by designation.

"clicked" the trigger once. *Id.* at 43. Since Clark "ain't no rookie at this," he knew that these steps would enable him to fire the gun the next time he pulled the trigger. App'x at 15. What he did not know, however, is that Kiki had loaded just three bullets into the revolver's seven-round chamber.

When they arrived at the store, Kiki entered, and Clark and Mario waited outside. As Kiki emerged from the store, she was arguing with Eric Allen, whom Clark did not know. According to Clark's testimony, Allen, in a raised, angry voice, said that Kiki "brought [Clark and Mario] down there to do something to him and that he will do something to [them] if [they] don't leave." R.44 at 28. Clark says that Allen threatened them, "put his hand in his pocket" and told Clark, "Man, you need to get off from down there." *Id.* at 28–29. Clark then "upped" him, which is to say pulled his gun on Allen. *Id.* at 29.

Allen took his hand out of his pocket—without a firearm—and rushed at Clark. Clark jumped back, aimed the revolver at Allen and pulled the trigger. Rather than firing, as Clark anticipated, the gun merely "clicked." App'x at 18. Clark again ran back a short distance and tried to shoot Allen. Again, just a click. Allen caught up with Clark and they "got to wrestling over the gun." R.44 at 29. Clark's friend Mario eventually joined the scuffle but tripped on a stump and "grabbed [Allen's] dreds," causing all three men to fall to the ground. App'x at 9. As Clark got back to his feet, he tried to shoot Allen again. The third time worked. But in his haste, Clark shot wide of the mark, and the bullet struck Mario (up to then, his friend) in the leg. Despite the wound, Mario managed to flee the scene while Clark and Allen struggled over the gun until the police arrived and broke up the fight.

Officers arrested Clark and took him to the Davidson County Criminal Justice Center. On January 21, 2008, Clark placed a call from jail and discussed the events leading to his arrest with both Kiki and Mario. The call was recorded and suggested that Clark went to the store prepared for a fight. A few months later, a federal grand jury indicted Clark for being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). The State transferred him to federal custody, and he pled guilty. Clark's Presentence Report recommended a 77–96 month guidelines range based on an offense level of 21 and a criminal history of VI. Included in the calculation was a four-level enhancement for possessing the firearm "in connection with another felony offense," U.S.S.G. § 2K2.1(b)(6)— namely: (1) aggravated assault, *see* Tenn. Code Ann. § 39-13-101, and (2) reckless endangerment with a deadly weapon, *see* T.C.A. § 39-13-103.

Clark objected to the four-level increase, arguing that he acted in self-defense, which provides a complete defense to either felony under Tennessee law. Both sides presented evidence about the defense at the sentencing hearing. On the prosecution's side: the government played the fifteen-minute (secretly recorded) tape of Clark's phone conversation about the scuffle; and Special Agent James Rhoden testified about his investigation of the case. On Clark's side: Clark testified that he tried to shoot Allen because he "thought [Allen] was going to get the gun from [him] and shoot [him] with it," R.44 at 32; and Clark's friend Mario testified that Allen "was clutching like he had a gun" and "told [them] . . . he [was] going to shoot all of [them]," *id.* at 61–62.

The district court rejected Clark's self-defense argument and found that Clark violated Tennessee's prohibition on reckless endangerment with a firearm. The court did not believe that

Clark's actions rose "to the level of what would be a legal self defense because the amount of force, a gun, was used to repel someone attacking him with his hand.  It was disproportionate . . . ."  R.44 at 91.  After considering the § 3553(a) factors, the court imposed a 77-month prison sentence, which lies at the bottom of the advisory guidelines range.

## II.

When a case involves an enhancement under § 2K2.1(b)(6), the district court may make, and we may be called on to review, several different types of rulings.  The district court may interpret § 2K2.1(b)(6) itself, a ruling that receives fresh review on appeal.  *United States v. Burns*, 498 F.3d 578, 580 (6th Cir. 2007).  The court may interpret a state or federal statute defining the predicate felony offense, a ruling that also receives fresh review on appeal.  *United States v. Woodward*, 337 F. App'x 534, 537 (6th Cir. 2009).  And the court may make findings of fact material to these legal interpretations, findings that we review for clear error.  *United States v. Rogers*, 594 F.3d 517, 522 (6th Cir. 2010).

Clark's appeal raises two basic questions:  (1) Did Clark commit reckless endangerment under Tennessee law?  (2) And, if so, did Clark satisfy the requirements for asserting a self-defense claim?  For the reasons that follow, the district court permissibly rejected both of Clark's arguments.

A.

*Reckless Endangerment.* Under Tennessee law, "[a] person . . . who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury" is guilty of a felony if the offense is "committed with a deadly weapon." T.C.A. § 39-13-103. Clark's conduct—above all aiming a loaded and cocked gun and repeatedly pulling the trigger—falls neatly within the category of "recklessly" putting another person "in imminent danger of . . . serious bodily injury" with a "deadly weapon."

*State v. Campbell*, No. W2005-01418-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 861 (May 2, 2006), upheld a conviction under the statute in similar circumstances. In rejecting a challenge to the sufficiency of the evidence, the court noted:

> Defendant . . . carried a concealed gun in the waistband of his pants . . . on the day of the incident. While wearing the gun, Defendant walked down the street to a neighboring house where he encountered the victim. . . . [A]fter exchanging words with the victim, Defendant fired the weapon at the victim and shot him in the thigh. Defendant intended to fire the gun at the victim, and he knew that doing so would cause injury to the victim.

*Id.* at *9–10. The only potential difference between *Campbell* and this case is that Clark shot an unintended victim (Mario Scales), not an intended victim (Allen), but that reality does not alter the statute's application. It applies so long as the defendant "place[s] another person in imminent danger," T.C.A. § 39-13-103(a), regardless of whether the intended harm, as opposed to some other harm, comes to pass. *See State v. Ramsey*, 903 S.W.2d 709, 712 (Tenn. Crim. App. 1995).

Clark submits that the district court found reckless endangerment merely because "he showed up with a gun and cocked it." R.44 at 100. But the court never said that carrying a cocked and loaded gun by itself constituted reckless endangerment, and no party to the case asked for such an interpretation. Why, indeed, would anyone propose such an interpretation given everything else Clark did, including firing the weapon? As part of its analysis of the reckless endangerment violation *and* self-defense claim, the court simply included these facts in the mix, as well it should have. In *Campbell* too, it bears adding, the court thought that "carr[ying] a concealed gun in the waistband" was a relevant fact (among others) in determining whether the defendant violated the statute. 2006 Tenn. Crim. App. LEXIS 861 at *10. So too here.

B.

*Self defense*. The district court properly applied (or more precisely did not apply) Tennessee's self-defense statute. Under Tennessee law, self-defense is a "defense to prosecution" for otherwise unlawful conduct, T.C.A. § 39-11-601, and it is defined as follows:

> (b)(1) . . . [A] person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force.
>
> (2) . . . [A] person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:
>
>> (A) The person has a reasonable belief that there is an imminent danger of death or serious bodily injury;

> (B) The danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and
>
> (C) The belief of danger is founded upon reasonable grounds.

T.C.A. § 39-11-611. The statute distinguishes between using "force" in general and using "force intended or likely to cause death or serious bodily injury." To invoke the latter defense, the statute says, the defendant must reasonably believe that there is imminent danger of death or serious bodily injury. Tennessee law also provides that the defense is unavailable "[i]f the person using force provoked the other individual's use or attempted use of unlawful force, unless . . . [t]he person using force abandons the encounter or clearly communicates to the other the intent to do so; and . . . [t]he other person nevertheless continues or attempts to use unlawful force against the person . . . ." T.C.A. § 39-11-611(e). This last point applies not only to "the initiation of a confrontation" but also to "an unreasonable escalation of a confrontation in progress." *State v. Renner*, 912 S.W.2d 701, 704 (Tenn. 1995). The prosecution bears the burden of proving that the defendant did not act in self-defense, *see State v. Belser*, 945 S.W.2d 776, 782 (Tenn. Crim. App. 1996), and it is "well settled" that the existence (or not) of the defense raises "a factual determination" for the "trier of fact." *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *see also State v. Perkins*, No. W2007-02774-CCA-R3-CD, 2009 WL 1741400 at *3 (Tenn. Crim. App. June 7, 2009).

That the existence of self-defense raises a question of fact lengthens Clark's climb on this appeal and steepens it as well. Appellate courts tend to be reluctant to second guess the factual findings of trial judges because "[u]nlike the trial court, we [do] not see the defendant [and other witnesses] testify at the sentencing hearing." *United States v. Poynter*, 495 F.3d 349, 351 (6th Cir.

2007); *see also Beard v. Kindler*, 130 S. Ct. 612, 618 (2009). In this instance, before rejecting the defense, the district court heard three witnesses from both sides about the question and enjoyed a front-row seat in assessing the import and credibility of their testimony. *See Poynter*, 495 F.3d at 351. Faced with a second-hand account of the proceeding and the detached perspective of a transcript, we cannot say that the district court clearly made a mistake. *See United States v. Rogers*, 594 F.3d 517, 522 (6th Cir. 2010).

Clark, it is true, presented several pieces of evidence that, if credited, could persuade a trier of fact that his attempts to shoot Allen—and his accidental shooting of Mario—were reasonably justified in response to an imminent threat of death or serious bodily injury:

> * Clark told his friend Mario that he "went to jail . . . tryin' to save" himself and his friends and that "he wasn't even fixin' to up on [Allen] . . . until he . . . went in his pocket." App'x at 16–17.

> * Mario recalled thinking that "if [Allen] get this pistol . . . he gonna kill both of us," App'x at 16, and later testified at the sentencing hearing that Allen "was clutching like he had a gun," R.44 at 61.

> * Clark testified that when Allen reached into his pocket he said that "he was going to shoot [them]," R.44 at 28, and also testified that he got the gun in the first place because he "had been in some altercation . . . [and] people had been calling [his] phone threatening [him] and stuff like that," *id.* at 26.

But the government, too, presented evidence in support of its theory of what happened that day:

> * Clark admitted that he never saw Allen with a gun, and after he testified that "[Allen] was talking about he was going to shoot us," R.44 at 28, his counsel asked, "He was threatening to shoot you?" and Clark responded, "He was just threatening," *id.* at 20, all suggesting that Clark did not have a reasonable fear of imminent death or serious bodily injury.

        \* Clark cocked the revolver before he spoke with Allen, suggesting that he went to the market intending to get in a fight and that *he* was the aggressor.

        \* Clark told Mario that when he was wrestling with Allen he told him to let go of the revolver or that they would both go to jail, but Allen said that he did not care about going to jail. "I said," Clark recounted, "alright. I'm gonna kill you. . . . I was mad as a mother f—er," App'x at 16, suggesting that he fired the gun not to save himself from the threat of injury or death but from the threat of jail.

        \* And Clark's testimony was inconsistent. In describing the third time he pulled the trigger and shot Mario, Clark said both that he "tried to pull the trigger again," R.44 at 30, and that it was unintentional, *see id.* at 42.

In the face of this evidence, a reasonable trier of fact could have gone either way. The resolution of this self-defense issue thus necessarily depended on credibility assessments that we have no basis here to second-guess.

But wait, protests Clark, "the Government cannot explain what safer course of action Ronald Clark should have taken when he was threatened with death by a dangerous man who acted as if he had a gun and was accompanied by two gangsters." Clark Reply Br. 1. But this argument, too, overlooks the standard of review, premised as it is on inferences favoring Clark's position, not the fact-finder's. The court found that the only threat to which Clark reasonably could have responded was the need to "repel someone attacking him with his hand." R.44 at 91. Yet here, and throughout his appellate briefs, Clark leans heavily on factual assertions he made below that we could credit only if he had won below. He did not. Having lost below, Clark is stuck with a record that requires us to read the facts and inferences in favor of the district court's ruling, *cf. United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009), not as a vindication of the truth of his testimony below. Unless the district court clearly made a mistake in its factual findings—by, say, mischaracterizing the

evidence, misunderstanding it or otherwise taking an incoherent path in construing it—we must affirm Clark's sentence. *See Rogers*, 594 F.3d at 522. Since the record plausibly establishes that Clark "unreasonabl[y] escalat[ed] . . . a confrontation in progress," *Renner*, 912 S.W.2d at 704, when he pulled the gun on Allen, we must do exactly that.

III.

For these reasons, we affirm.