**STATE of Tennessee**

v.

**James Gary TURNER.**

Supreme Court of Tennessee,
at Nashville.

Oct. 6, 2005 Session.

April 26, 2006.

Gregory D. Smith, Clarksville, Tennessee; and Michael J. Collins, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, James Gary Turner.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Michelle Chapman McIntire, Assistant Attorney General; William Michael McCowen, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J.; E. RILEY ANDERSON, JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

We granted permission to appeal in this case pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure in order to determine whether the evidence adduced in the trial court sufficiently supports the defendant's felony evading arrest conviction and whether a sentence of one year for fourth offense driving on a revoked license, a Class A misdemeanor, is valid. Because we view the evidence as sufficient to support the conviction for felony evading arrest (with risk of death or injury), and because a one-year term of confinement for the revoked license conviction is specifically authorized by statute, we af-

firm the judgment of the Court of Criminal Appeals upholding both the convictions and sentences.

## I. Facts and Procedural History

In May 2002, the defendant, James Gary Turner, was indicted for felony reckless endangerment,[1] felony evading arrest with risk of death or injury,[2] and driving on a revoked license, fourth offense.[3] The reckless endangerment count was not prosecuted, and the defendant pleaded "guilty" to driving on a revoked license, leaving the determination of how many prior offenses he had committed to the trial court. The defendant pleaded "not guilty" to evading arrest with risk of death or injury.

At trial, Officer Christopher Jones of the Shelbyville Police Department testified that at approximately 10:00 p.m. on January 20, 2000, he and his partner, Officer Bruce Davis, saw the defendant drive through a red light at the intersection of Derry and Madison Streets. Jones activated the emergency equipment in an attempt to stop the defendant, but the defendant accelerated, passing a vehicle in a no-pass zone and ignoring a four-way stop sign. The defendant then drove through two red lights and finally stopped in his own driveway.

The defendant fled on foot, jumping a fence; Jones chased the defendant, but lost sight of him for a few minutes. Approximately four or five minutes later, the defendant approached Davis, who had remained with the defendant's vehicle, and asked what the officers were doing in his driveway. While he admitted that the ve-hicle was his, he denied having driven it that night. The defendant was then taken into custody.

Both officers estimated that the defendant's speed during the chase was between fifty and sixty miles per hour at times. They testified that the area through which the defendant was speeding was a heavily-traveled residential neighborhood. Davis testified that he saw vehicles approaching the lights at the intersections through which the pursuit proceeded. Fortunately, those vehicles heeded the emergency equipment and yielded. Davis also testified that pedestrians generally use one of these intersections day and night. Finally, he acknowledged, however, that no vehicles had approached in the opposite lane when the defendant passed the vehicle in a no-pass zone and that no cars or people had been injured during the pursuit.

The defendant's girlfriend, Gloria Evans, testified on his behalf. She acknowledged that the defendant had passed her vehicle during the chase while she was completely stopped at a four-way stop sign, but she denied that the defendant had placed her in any danger. She also testified that she did not see any other vehicles or individuals in the vicinity when this occurred.

The jury found the defendant guilty of felony evading arrest with risk of death or injury, a Class D felony. After finding two enhancement factors,[4] the trial court sentenced the defendant as a Range II, standard offender, to concurrent terms of eight years for the felony evading arrest conviction and one year for the driving on a revoked license, fourth offense conviction.

---

1. Tenn.Code Ann. § 39–13–103 (1991).

2. Tenn.Code Ann. § 39–16–603 (1997).

3. Tenn.Code Ann. § 55–50–504 (1998).

4. The trial court found two enhancement factors applied—previous convictions in addition to those needed to establish the sentencing range and an unwillingness to comply with the terms of probation. Tenn.Code Ann. § 40–35–114(2) & (9) (1997 & Supp.2002).

The defendant's motion for a new trial was denied, and the defendant appealed to the Court of Criminal Appeals. The Court of Criminal Appeals affirmed the trial court's ruling, and the defendant appealed to this Court. The defendant contends that the evidence is insufficient to support the felony evading arrest with risk of death or injury conviction and that the trial court erred in sentencing him to a one-year term of confinement for the driving on a revoked license, fourth offense conviction.

## II. Sufficiency of the Evidence for Felony Evading Arrest

### A. Standard of Review

We review challenges to the sufficiency of the evidence by viewing " 'the evidence in the light most favorable to the prosecution.' " *State v. Jackson*, 173 S.W.3d 401, 408 (Tenn.2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* Additionally, " 'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences to be drawn therefrom.' " *Id.* (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn.2000)).

### B. Analysis

Tennessee Code Annotated section 39–16–603(b)(3) (1997) provides that intentionally fleeing from a law enforcement officer is a Class E felony. A violation of this statute will constitute a Class D felony, however, if "the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties." *Id.*

The defendant contends that the evidence is insufficient for the jury to find, beyond a reasonable doubt, that he placed anyone in danger. Thus, he argues that the evidence was insufficient to elevate the evading arrest conviction to a Class D felony. The State asserts that Davis' testimony that traffic was present at the various intersections through which the pursuit coursed sufficiently demonstrates that the defendant created a *risk* of death or injury to others, elevating the evading arrest conviction to a Class D felony.

Tennessee Code Annotated section 39–16–603(b)(3) provides that a violation of this statute will constitute a Class D felony if the flight creates a *risk* of death or injury to innocent bystanders or other third parties. By the plain language of the statute, proof of actual injury or death is not necessary for conviction. All that need be shown is that the defendant evaded arrest and that in so doing, he created the *risk* of death or injury. *See State v. Payne*, 7 S.W.3d 25, 28–29 (Tenn. 1999) (proof to show that a member of the public was in the zone of danger during a car chase could be made by showing that during the chase another motorist was driving on the street or that a pedestrian was walking down the sidewalk). Clearly, the defendant created a risk of death or injury to every driver and pedestrian in his proximity as he operated his vehicle heedless of the traffic signals. We conclude, as did the Court of Criminal Appeals, that a reasonable juror could have found that the defendant's conduct placed innocent bystanders or third parties at risk. Thus, we hold that the evidence was sufficient to support the defendant's conviction for Class D felony evading arrest.

## III. One-year sentence for Driving on a Revoked License

### A. Standard of Review

Questions of statutory construction are reviewed *de novo* with no presumption

of correctness given to the lower courts' conclusions. *State v. Denton,* 149 S.W.3d 1, 17 (Tenn.2004) (citing *State v. Walls,* 62 S.W.3d 119, 121 (Tenn.2001)).

### B. Analysis

The trial court convicted the defendant of driving on a revoked license, fourth offense. That statute provides, in part, that: "A person who drives a motor vehicle ... when the person's privilege to do so is cancelled, suspended, or revoked commits a Class B misdemeanor." Tenn. Code Ann. § 55–50–504(a)(1). A second, or subsequent violation of the statute is a Class A misdemeanor. Tenn.Code Ann. § 55–50–504(a)(2). The penalty provided for a second or subsequent violation of the statute "shall be ... confinement for not less than forty-five (45) days nor more than one (1) year; and ... a fine of not more than three thousand dollars ($3,000)." *Id.*

The defendant argues that the penalty provided in this statute is illegal because it allows imposition of a felony sentence for a misdemeanor crime. In support of this contention, he cites the provided penalties for conviction of a Class A misdemeanor:

> (e) The authorized terms of imprisonment and fines for misdemeanors are:
>
> (1) Class A misdemeanor, not greater than eleven (11) months twenty-nine days (29) days or a fine not to exceed two thousand five hundred dollars ($2,500), or both, *unless otherwise provided by statute;*

Tenn.Code Ann. § 40–35–111(e)(1) (1997) (emphasis added). The defendant argues that the trial court's sentence of one year is void because it does not comport with this general definition of a Class A misdemeanor.

The State asserts that the legislature intended, when defining a Class A misdemeanor, that certain misdemeanor offenses might merit a penalty of more than eleven months, twenty-nine days. It contends that the language, "unless otherwise provided by statute," supports this proposition. *See* Tenn.Code Ann. § 40–35–111(e)(1). Consequently, the legislature expressly authorized by statute incarceration for up to one year for subsequent violations of driving on a revoked license. *See* Tenn.Code Ann. § 55–50–504(a)(2).

■■■ When construing facially conflicting statutes, this Court's duty is to give effect to the legislative intent without unduly restricting or expanding a statute's intended coverage. *State v. Davis,* 173 S.W.3d 411, 413–14 (Tenn.2005) (citing *State v. Jennings,* 130 S.W.3d 43, 46 (Tenn.2004)). Statutes on the same subject must be construed together harmoniously, so that they do not conflict. *In re Akins,* 87 S.W.3d 488, 493 (Tenn.2002) (citing *Parkridge Hosp., Inc. v. Woods,* 561 S.W.2d 754, 755 (Tenn.1978)). Finally, specific statutory language will control over a general conflicting statutory provision. *See Armwine v. Union County Bd. of Educ.,* 120 S.W.3d 804, 809 (Tenn.2003).

■■■ First, we note that the increased penalty for subsequent violations of this statute took effect in 1992 when the legislature amended Tennessee Code Annotated section 55–50–504. Before the 1992 amendment, the maximum sentence for driving on a revoked license, second or subsequent offense, was no more than eleven months, twenty-nine days imprisonment. Tenn.Code Ann. § 55–50–504 (1988). The 1992 amendment increased the range to a possible one-year term.[5]

---

**5.** We note that the 1992 amendment also increased the possible fines for a second or subsequent violation of this state from a maximum fine of $2,500 to a maximum fine of

When the legislature makes a change in the language of a statute, we must assume that it was deliberate. *Dunn v. Hackett,* 833 S.W.2d 78, 81 (Tenn.Ct.App.1992) (changing the language of a statute gives rise to a presumption that such departure from the old law was intended). Thus, we find that the change in the language of the statute providing an increased penalty for a second or subsequent violation of the statute was intentional despite the misdemeanor status of the offense. As such, it is our duty to give effect to that legislative intent.

Next, we address the apparent conflict between the general definition of a Class A misdemeanor in Tennessee Code Annotated section 40–35–111(e)(1) and the one-year maximum confinement provision in Tennessee Code Annotated section 55–50–504(a)(2). We believe the statutes can be construed together harmoniously. The language in Tennessee Code Annotated section 40–35–111(e)(1), which provides penalties for Class A misdemeanors, also provides that these penalties may be varied by another statute. The language *"unless otherwise provided by statute"* allows for such a result. *Id.* Since the legislature specifically provided for the possibility that another statute could vary the penalty for a Class A misdemeanor, the two statutes can be construed together. Tennessee Code Annotated section 50–55–504 will govern the penalties for second or subsequent violations, since that statute specifically addresses the penalties for the offense of driving on a revoked license.

Furthermore, we note that this is not the only statute that varies the penalty provided for a Class A misdemeanor. Several other statutes provide specific penalties for violations which do not follow the general definition of a Class A misdemeanor. *See* Tenn.Code Ann. § 39–14–502(b) & (c)(1) (2003 & Supp.2005) (criminal littering punishable only by fines and removing litter from state or local highways, public playgrounds, public parks, or other appropriate public places); Tenn.Code Ann. § 39–17–111(b) (2003) ("a Class A misdemeanor, punishable only by a fine of not more than two thousand five hundred dollars $2,500"); Tenn.Code Ann. 39–17–431(f) (2003 & Supp.2005) ("A violation of any provision of this section is a Class A misdemeanor punishable by fine only."). Although none of these statutes provides for an increased penalty of confinement, they do vary the possible punishment for a Class A misdemeanor violation by limiting the penalty to that specifically provided for in the statute. Accordingly, we hold that the one year imprisonment penalty provided in Tennessee Code Annotated section 55–50–504(a)(2) is a valid sentence for subsequent violations of the statute.

## IV. Conclusion

We affirm the Court of Criminal Appeals' holding that the evidence was sufficient to support the defendant's conviction for Class D felony evading arrest. In addition, we hold that the trial court did not err in sentencing the defendant to a one-year term of confinement for driving on a revoked license, fourth offense, since that sentence is a valid punishment for this Class A misdemeanor. Accordingly, we affirm the decision of the Court of Criminal Appeals. It appearing that the defendant, James Gary Turner, is indigent, the costs of this appeal are taxed to the State

$3,000. This maximum $3,000 fine is also more than is provided for in the section defining the general penalties for Class A misdemeanors. *Compare* Tenn.Code Ann. § 55–50–504 (1988) *with* Tenn.Code Ann. § 55–50–504 (1998); *but see* Tenn.Code Ann. § 40–35–111(e)(1) (1997).

of Tennessee, for which execution may issue if necessary.