*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

                                                    No. 08-6181
       *v.*

JAMES ROGERS,
              *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 07-20364-001—Jon Phipps McCalla, Chief District Judge.

Argued: December 3, 2009

Decided and Filed: February 8, 2010

Before: GRIFFIN and KETHLEDGE, Circuit Judges; CARR, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Mary Catherine Jermann-Robinson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. G. Kirby May, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Mary Catherine Jermann-Robinson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. G. Kirby May, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

## OPINION

_____

KETHLEDGE, Circuit Judge. James Rogers pled guilty to being a felon in possession of a firearm, 18 U.S.C. § 922(g), and now challenges his sentence. Because

_____

[*] The Honorable James G. Carr, Chief United States District Judge for the Northern District of Ohio, sitting by designation.

the district court correctly calculated Rogers's advisory range under the Sentencing Guidelines, we affirm.

I.

In May 2007, Memphis police received reports that stolen vehicles were stored outside Rogers's home. They responded by sending a confidential informant to the property. Upon returning, the informant said he had seen a stolen Chevrolet Corvette there. He added that Rogers had a pistol with him and was about to leave the residence as a passenger in a white pickup truck.

The officers stopped the vehicle as it pulled away from Rogers's home, and arrested him pursuant to an outstanding warrant from Mississippi. Upon searching the vehicle, they found a loaded .22-caliber pistol. Rogers admitted the gun was his.

Soon thereafter, Rogers's live-in girlfriend consented to a search of Rogers's home. Officers found the stolen Corvette in a shed at the rear of Rogers's property, and also found parts from a stolen Chevrolet Blazer in Rogers's garage. They later found the Blazer's hull, with its vehicle identification number removed, at another residence on the same street.

Rogers had a long criminal record, including several convictions for state felony offenses. Federal prosecutors therefore charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). He pled guilty to the charge.

Using the 2007 version of the Sentencing Guidelines, the district court assigned Rogers a base-offense level of 20 because he had committed a prior "crime of violence." *See* U.S.S.G. § 2K2.1(a)(4)(A). The court added a four-level enhancement under U.S.S.G. § 2K2.1(b)(6), finding that Rogers had possessed the firearm "in connection with another felony offense." The court then applied a three-level downward adjustment for acceptance of responsibility. The resulting total offense level of 21 and Rogers's criminal history category of VI yielded an advisory range under the Guidelines of 77 to 96 months' imprisonment. The district court overruled Rogers's objections to the

calculation of his base-offense level and the § 2K2.1(b)(6) enhancement, and sentenced him to 86 months' imprisonment.

This appeal followed.

## II.

### A.

Rogers first argues that the district court erred in assigning him a base-offense level of 20 because he committed his felon-in-possession offense after "sustaining one felony conviction of . . . a crime of violence." U.S.S.G. § 2K2.1(a)(4)(A). We review de novo the district court's conclusion that a particular offense qualifies as a crime of violence. *See United States v. Bass*, 315 F.3d 561, 564-65 (6th Cir. 2002).

The Guidelines define "crime of violence" to include any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a). An offense qualifies as a crime of violence under the residual clause—*i.e.*, as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another"—if it is "roughly similar, in kind as well as in degree of risk posed," to the enumerated offenses. *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581, 1585 (2008) (construing the definition of "violent felony" contained in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii)); *see also United States v. Bartee*, 529 F.3d 357, 363 (6th Cir. 2008) (observing that the Armed Career Criminal Act's definition of "violent felony" and the Guidelines' definition of "crime of violence" are construed in a consistent manner, and applying *Begay* to the latter). Thus, the crime must be similar to the listed offenses not only in the degree of risk posed but also in the sense that it involves "purposeful, violent, and aggressive conduct." *Begay*, 128 S. Ct. at 1586.

In determining whether a particular offense meets this standard, we begin with a "categorical approach," which "look[s] only to the fact of conviction and the statutory

definition—not the facts underlying the offense." *Bartee*, 529 F.3d at 359. When the prior conviction was entered via a guilty plea, we may also look to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005); *see also Bartee*, 529 F.3d at 359.

Based on the record before us, Rogers's criminal history contains two candidate offenses: a conviction for reckless endangerment with a deadly weapon, *see* Tenn. Code. Ann. § 39-13-103, and a conviction for evading arrest in a motor vehicle. *See id.* § 39-16-603(b)(1). Both convictions were entered via guilty pleas and arose out of a single incident in which Rogers sped away from a traffic stop, nearly hitting a police officer with his vehicle.

The district court held that the reckless-endangerment conviction fit into the residual clause of § 4B1.2(a). That conclusion was correct under this court's case law at the time of Rogers's sentencing hearing, *see United States v. Rutledge*, 33 F.3d 671, 674 (6th Cir. 1994), but was rendered incorrect by our subsequent decision in *United States v. Baker*, 559 F.3d 443, 453 (6th Cir. 2009). The government does not dispute the point. Accordingly, we hold that Rogers's reckless-endangerment conviction was not a crime of violence.

That leaves Rogers's conviction for evading arrest. The statute under which Rogers was convicted makes it a felony "for any person, while operating a motor vehicle on any street, road, alley or highway[,] . . . to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b)(1). Although this court has not specifically addressed whether § 39-16-603 describes a crime of violence, we recently held in *United States v. Young*, 580 F.3d 373 (6th Cir. 2009), that a similarly worded Michigan statute does. *See id.* at 381. The statute there made it a crime for a driver, when directed to stop by a police officer, to "willfully fail to obey" by "attempting to flee or elude[,]" among other things. Mich. Comp. Laws § 257.602a(1). We reasoned

that a conviction under this statute involves purposeful, aggressive, and violent conduct, and "poses a serious potential risk of physical injury to others." *Young*, 580 F.3d at 377-78.

*Young* governs here. The Tennessee offense's requirement of intentional conduct is, for our purposes, no different than the Michigan statute's requirement of willful conduct. And the Tennessee offense's *actus reus*—"flee[ing] or attempt[ing] to elude"—is indistinguishable from that of the Michigan statute, which criminalizes "attempting to flee or elude." Rogers's evading-arrest offense was therefore a crime of violence.

That conclusion holds regardless of whether Rogers's evading-arrest offense was a Class E or a more serious Class D felony under Tennessee law. The record is ambiguous on this point, and Rogers is correct that only the Class D felony requires a showing that the defendant's conduct "create[d] a risk of death or injury to innocent bystanders or other third parties." Tenn. Code Ann. § 39-16-603(b)(3). But whether or not a defendant's flight poses a risk to third parties, it will "nearly always pose a substantial danger to . . . pursuing officers." *Young*, 580 F.3d at 378; *see also United States v. Harrimon*, 568 F.3d 531, 536 (5th Cir. 2009) (noting the "marked likelihood of pursuit and confrontation" associated with fleeing from the police in a motor vehicle). Moreover, for an offense to qualify as a crime of violence, it need only create a "serious *potential* risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2) (emphasis added). "[O]ffenders typically attempt to flee by any means necessary," *Young*, 580 F.3d at 378, and in the ordinary case, "an offender fleeing from an attempted stop or arrest will not hesitate to endanger others" in order to escape. *Harrimon*, 568 F.3d at 536. As a categorical matter, the decision to flee thus carries with it the requisite potential risk, even if the resulting chase does not escalate so far as to create the actual risk of death or injury that would make it a Class D felony under Tennessee law. Contrary to Rogers's suggestion, therefore, we need not remand the case to sort out this issue.

Finally, Rogers appears to argue that, since both of his candidate offenses arose from the same conduct, we ought to consider their elements *in pari materia* for purposes

of determining whether they are crimes of violence.  Thus, Rogers says, evading arrest cannot be a crime of violence because the dangerousness of his conduct was already an element of his reckless-endangerment conviction.  The short answer to this argument is that we reject its premise:  That one offense posed a serious potential risk of injury does not mean that another offense based on the same conduct cannot.  Moreover, the required risk need not itself be an element of the offense; instead, the elements must only describe conduct that in turn creates that risk.  For the reasons already stated, Rogers's evading-arrest conviction meets that test.

B.

Rogers separately argues that the district court erred in applying a four-level enhancement under § 2K2.1(b)(6) of the Guidelines.  That enhancement is appropriate if the district court finds by a preponderance of the evidence that the defendant "used or possessed [a] firearm . . . in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6); *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006).  In this context, we review the district court's factual findings for clear error.  *See United States v. Burke*, 345 F.3d 416, 426-27 (6th Cir. 2003).

Here, the district court concluded that Rogers operated a motor-vehicle chop shop at his residence, specifically finding that Rogers had stored parts from the stolen Chevrolet Blazer there in order to resell them later.  The record amply supports those findings; and they were in turn sufficient to establish a violation of Tennessee's Motor Vehicle Chop Shop Act, which makes it a felony to "knowingly own, operate or conduct a chop shop."  Tenn. Code Ann. § 55-5-203(a)(1); *see also id.* § 55-5-202(1) (defining "[c]hop shop" to include any "premises where one . . . or more persons knew, or should have known, that they were engaged in . . . storing any motor vehicle or motor vehicle component part that was obtained by theft, or any other unlawful means to . . . [s]ell or dispose of the motor vehicle or motor vehicle component part").  Indeed, Rogers does not seriously dispute that his conduct fell within the terms of the Tennessee statute.

The issue, then, is whether Rogers possessed the gun in connection with his felony chop-shop offense.  A firearm is possessed in connection with another offense if

it "facilitated, or had the potential of facilitating" the other offense.  U.S.S.G. § 2K2.1, Application Note 14(A).  To justify a § 2K2.1(b)(6) enhancement, therefore, the government need only "establish that there was a nexus between the firearm and the other felony offense that is more than coincidental." *United States v. Huffman*, 461 F.3d 777, 788 (6th Cir. 2006).

Rogers contends that the government failed to meet this burden, emphasizing that he was arrested with the gun as he traveled away from his home.  But the record shows that Rogers had possessed the gun at home, since he had just left there when he was arrested with it and the confidential informant said that Rogers had the gun with him when he left.  Rogers's residence, of course, is where the chop shop was; and the district court found that the gun had the potential to facilitate Rogers's offense when he possessed it there.  The court reasoned that chop-shop customers are by definition not law-abiding; that Rogers could not call the police if a transaction turned violent, or if a customer decided to steal his parts rather than pay for them; and that Rogers's gun helped protect against those dangers, thereby facilitating his illegal operation.  One might agree with those findings, or not—but in our judgment they were not clearly erroneous.

The district court's judgment is affirmed.