*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0118p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

DAVID EARL DOYLE,

        *Defendant-Appellant.*

No. 10-5075

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 07-10056-001—James D. Todd, District Judge.

Decided and Filed: May 4, 2012

Before: GRIFFIN and WHITE, Circuit Judges; WATSON, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** M. Dianne Smothers, OFFICE OF FEDERAL PUBLIC DEFENDER, Memphis, Tennessee for Appellant. James W. Powell, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee for Appellee.

    GRIFFIN, J., delivered the opinion of the court, in which WATSON, D. J., joined. WHITE, J. (pp. 12–18), delivered a separate dissenting opinion.

_____

## OPINION

_____

    GRIFFIN, Circuit Judge. Defendant David Earl Doyle appeals his sentence. The issue is whether his prior conviction under Tennessee state law for Class E felony evading arrest is a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"). This court held in *United States v. Rogers*, 594 F.3d 517 (6th Cir. 2010),

_____

    [*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

that it was,**¹** but the Supreme Court vacated our judgment and remanded the case for further consideration in light of its recent decision, *Sykes v. United States*, 131 S. Ct. 2267 (2011). *See Rogers v. United States*, 131 S. Ct. 3018 (2011) (mem.). For the reasons that follow, we again hold that Class E felony evading arrest under Tennessee law is a violent felony.

## I.

On the morning of May 1, 2007, the Perry County Sheriff's Office received a complaint of a suspicious vehicle parked behind a church. Upon arriving at the church, the deputies noticed Doyle in the driver's seat of the vehicle and a woman in the passenger's seat. Both were asleep, and the vehicle was running. The deputies observed a nine millimeter pistol in the pocket of the open driver's side door and what appeared to be a short-barreled, 20-gauge shotgun laying between the seats of the vehicle. After removing the firearms, the deputies woke Doyle and the woman before arresting them on various charges.

Two weeks later, a federal grand jury returned an indictment charging Doyle with being a felon in possession of a firearm, 18 U.S.C. § 922(g); possession of a firearm altered to have a barrel of less than eighteen inches in length, 26 U.S.C. §§ 5822, 5861(c), 5871; and possession of an unregistered firearm, 26 U.S.C. §§ 5822, 5861(d), 5871. Doyle pled guilty to the charges.

At sentencing, the district court ruled that Doyle was an "armed career criminal" under the Guidelines because he had three prior convictions that qualified him for an enhanced sentence under the ACCA: aggravated assault; burglary other than a habitation; and a Class E felony of evading arrest. U.S.S.G. § 4B1.4(a); 18 U.S.C. § 924(e). His base offense level was set at 34. The district court granted a three-level reduction for acceptance of responsibility. With an adjusted level of 31 and a criminal

---

**¹***Rogers* held that the offense was a "crime of violence" under the Sentencing Guidelines, but an identical analysis applies in determining whether an offense is a violent felony under the ACCA. *United States v. McMurray*, 653 F.3d 367, 371 n.1 (6th Cir. 2011).

history category of VI, Doyle's Guidelines range was 188-235 months.**2** The district court granted Doyle a variance by sentencing him to the statutory mandatory minimum of 180 months on count one, and 120 months on each of counts two and three, both to run concurrent to the sentence imposed on count one.  Doyle timely appealed.

II.

Doyle concedes that his previous convictions for aggravated assault, and for burglary, qualify as violent felonies under the ACCA.  Therefore, we need only determine whether his prior conviction for Class E felony evading arrest is a violent felony.  We review the district court's determination de novo.  *United States v. Flores*, 477 F.3d 431, 434 (6th Cir. 2007).

A.

The United States Sentencing Guidelines provide that a defendant is to be sentenced as an "armed career criminal" if he is subject to an enhanced sentence under the ACCA.  U.S.S.G. § 4B1.4(a).  Persons convicted under 18 U.S.C. § 922(g)  (e.g., felon possessing a firearm) who have three previous convictions for "violent felon[ies] or . . . serious drug offense[s]" are subject to an enhanced sentence under the ACCA. 18 U.S.C. § 924(e)(1).  A "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .*

*Id.* § 924(e)(2)(B) (emphasis added).  The italicized portion is known as the "residual clause."  *See Sykes v. United States*, 131 S. Ct. 2267, 2273 (2011).  In Tennessee, a Class E felony evading arrest offense does not have as an element the use, attempted use, or

---

**2**Without the ACCA enhancement, Doyle's adjusted offense level would have been 23, and his criminal history category would have been V, resulting in a Guidelines range of 84-105 months.

threatened use of physical force against another.  Nor is it burglary, arson, or extortion, and it does not involve the use of explosives.  Therefore, Class E felony evading arrest can be a violent felony only if it "otherwise involves conduct that presents a serious potential risk of physical injury to another."  We employ a categorical approach to make the determination.

> Under this approach, we look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction.  That is, we consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.

*Id.* at 2272 (quoting *James v. United States*, 550 U.S. 192, 202 (2007) (quotation marks omitted) (emphasis in original).  Further, we concern ourselves only with how an offense is committed "in the ordinary case," not how one commits it in "hypothesize[d,] unusual cases in which even a prototypically violent crime might not present a genuine risk of injury."  *James*, 550 U.S. at 208.

### B.

The relevant Tennessee law provides:

> (b)(1)  It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop.
>
> * * *
>
> (3) A violation of subsection (b) is a Class E felony unless the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties, in which case a violation of subsection (b) is a Class D felony.

Tenn. Code Ann. § 39-16-603(b)(1), (3).

Doyle argues that, because he was convicted only of a Class E felony, which, unlike the Class D variant, does not require that he "create[] a risk of death or injury to innocent bystanders or other third parties," his conviction necessarily falls outside the

ACCA's residual clause, which covers conduct that "presents a serious potential risk of physical injury to another." Based on the analysis in *United States v. Christian*, 214 F. App'x 337 (4th Cir. 2007) (per curiam), the district court rejected Doyle's argument. Shortly after Doyle was sentenced, this court issued its decision in *United States v. Rogers*, 594 F.3d 517 (6th Cir. 2010), holding that a conviction under Tennessee law for Class E felony evading arrest is a "crime of violence" under the Guidelines. *Id.* at 521. *Rogers* relied on this court's analysis in *United States v. Young*, 580 F.3d 373 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1723 (2010), and rejected the very argument Doyle makes here. Doyle argues in his appellate brief that *Rogers* was wrongly decided. He does not, however (and for good reason, we believe), attempt to distinguish *Rogers* – *Rogers* discussed the precise issue in this case and is undistinguishable.

However, after the parties filed their appellate briefs in this case, the Supreme Court vacated our judgment in *Rogers* and remanded the case for further consideration in light of its recent decision *Sykes v. United States*, 131 S. Ct. 2267 (2011). *See Rogers v. United States*, 131 S. Ct. 3018 (2011) (mem.). As of today, the original *Rogers* panel has not issued a decision on remand, and, to our knowledge, no other panel of our court has addressed the issue. Therefore, *Sykes*'s effect on our cases remains an open question.

In *Sykes*, the Supreme Court considered whether an Indiana law prohibiting drivers from knowingly or intentionally "flee[ing] from a law enforcement officer" was a violent felony under the ACCA's residual clause. 131 S. Ct. at 2270, 2273. One could commit Class D felony flight – "knowingly or intentionally . . . flee[ing] from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop" – in two primary ways: (1) by simply "us[ing] a vehicle to commit the offense[,]" Ind. Code Ann. § 35-44-3-3(b)(1)(A); or (2) by "draw[ing] or us[ing] a deadly weapon, inflict[ing] bodily injury on another person, *or operat[ing] a vehicle in a manner that creates a substantial risk of bodily injury to another person*[,]" *id.* § 35-44-3-3(b)(1)(B) (emphasis added). *Sykes*, 131 S. Ct. at 2271. Sykes was convicted under subsection (b)(1)(A) simply because he used a vehicle to commit the

offense.  *Id.* He argued that, because he was not convicted of flight under subsection (b)(1)(B), which requires that one "operat[e] a vehicle in a manner that creates a substantial risk of bodily injury to another person," his offense necessarily fell outside the requirements of the residual clause.   *Id.* at 2276; *compare* 18 U.S.C. § 924(e)(2)(B)(ii) ("or otherwise involves conduct that *presents a serious potential risk of physical injury to another*" (emphasis added)).  This essentially is the same argument Doyle makes in the present case.

The Supreme Court rejected Sykes's argument primarily because the two ways to commit vehicle flight carried the same criminal liability – both were Class D felonies punishable by six months to three years.  *Id.*  According to the Court, the parity in punishment reflected a view that, because "serious and substantial risks are an inherent part of [*any*] vehicle flight," those risks "need not be proved separately . . . ."  *Id.* at 2276; *see also id.* at 2283 (Thomas, J., concurring) ("[U]sing a vehicle to intentionally flee is always a class D felony, without any need to prove risk.").  Therefore, that a defendant was convicted under subsection (b)(1)(A) does not necessarily mean he did not create a substantial risk of bodily harm to another person.  To the contrary, it means his conduct necessarily created such risk *precisely because* he used a vehicle to flee.  *See id.* at 2276.  The Court reserved the question whether it matters under the residual clause that "a crime is a lesser included offense . . . where that offense carries a less severe penalty than the offense that includes it."  *Id.* at 2277; *see id.* at 2295 (Kagan, J., dissenting) ("[T]he Court reserves the question whether a vehicular flight provision like subsection (b)(1)(A) is a [violent felony] under ACCA 'where that offense carries a less severe penalty than [a greater] offense that includes it.'").

This appeal involves the type of state statute about which *Sykes* reserved discussion, for Class E felony evading arrest is a lesser included offense of the Class D version, *State v. Stanton*, No. M2003-03049-CCA-R3-CD, 2005 WL 639139, at *10 (Tenn. Crim. App. Mar. 17, 2005), and carries less criminal liability and potential for punishment than the Class D version, *compare* Tenn. Code Ann. § 40-35-111(b)(4)-(5). After a thorough review of the *Sykes* decision, we conclude that nothing in it casts doubt

upon our holding in *Rogers* that Class E felony evading arrest under Tennessee law is a crime of violence. Indeed, we find that *Sykes* further supports our conclusion that Class E felony evading arrest is a violent felony under the ACCA.

*Rogers* relied on our earlier decision in *Young*, which involved a Michigan statute materially similar to the Tennessee statute.[3] In *Young*, we held that fleeing and eluding under Michigan law was a crime of violence because it (1) posed a serious potential risk of physical injury to others, and (2) involved the same kind of "purposeful, violent, and aggressive conduct" as burglary, arson, extortion, or offenses involving the use of explosives. *Young*, 580 F.3d at 377 (citing *Begay v. United States*, 553 U.S. 137, 144-45 (2008)). It was purposeful because the statute requires willful non-compliance; it was aggressive because a deliberate attempt to flee or elude police is a "clear challenge to the officer's authority," usually causes the officer to give chase, and "typically lead[s] to a confrontation between the offender and the officer"; it was violent and sufficiently risky because the entire purpose of intentional flight is to avoid detention or arrest by means that nearly always pose a substantial danger to others, including pursuing officers. *Id.* at 377-78.[4]

*Rogers* concluded that *Young*'s holding "govern[ed]," "regardless of whether Rogers's evading-arrest offense was a Class E or a more serious Class D felony under Tennessee law." *Rogers*, 594 F.3d at 521. We noted that, in two ways, the residual clause covered a broader range of conduct than that necessary for a Class D felony.

---

[3] The Michigan statute at issue in *Young* provided that:

> A driver of a motor vehicle who is given . . . a . . . signal by a [police officer] . . . directing the driver to bring his or her motor vehicle to a stop, and who willfully fails to obey that direction . . . is guilty of a misdemeanor . . . .

*Young*, 580 F.3d at 376 (quoting Mich. Comp. Laws § 257.602a(1) (1996)). Commission of the offense less than five years after a prior fleeing-and-eluding conviction is punishable as a felony. *Id.*

[4] In light of *Sykes*, our application in *Young* of *Begay*'s "purposeful, violent, and aggressive" test may have been redundant to our inquiry into risk. *Sykes*, 131 S. Ct. at 2275 ("In many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of physical injury to others tend to be one and the same."); *see also id.* at 2277 (Thomas, J., concurring) (noting that the majority opinion "impl[ies] that the 'purposeful, violent, and aggressive' test may still apply to offenses 'akin to strict liability, negligence, and recklessness crimes.'"); *id.* at 2285 (Scalia, J., dissenting) (same). *Young*'s inquiry into the risk remains sound.

First, whereas one must "create[] a risk of death or injury to innocent bystanders or other third parties" to be convicted of a Class D felony, one need only create a "serious *potential* risk of physical injury to another" for the crime to fall within the residual clause, and one who commits a Class E felony does this "in the ordinary case[.]" *Id.* Second, while the Class D version requires the creation of risk to "innocent bystanders or other third parties," a phrase that textually excludes pursuing officers,[5] the residual clause requires only that risk be posed to "another," a term that logically *includes* pursuing officers, and a Class E felony "nearly always" creates this risk. *Id.* "As a categorical matter," we concluded, "the decision to flee thus carries with it the requisite potential risk, even if the resulting chase does not escalate so far as to create the actual risk of death or injury that would make it a Class D felony under Tennessee law." *Id.*

*Sykes* fully supports our holdings in *Young* and *Rogers.* To answer the question before it, the Supreme Court in *Sykes* looked at the enumerated offenses in the residual clause for guidance, and found that vehicular flight posed risks comparable to two listed offenses:

> When a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense. Even if the criminal attempting to elude capture drives without going at full speed or going the wrong way, he creates the possibility that police will, in a legitimate and lawful manner, exceed or almost match his speed or use force to bring him within their custody. A perpetrator's indifference to these collateral consequences has violent – even lethal – potential for others. A criminal who takes flight and creates a risk of this dimension takes action similar in degree of danger to that involved in arson, which also entails intentional release of a destructive force dangerous to others. This similarity is a beginning point in establishing that vehicle flight presents a serious potential risk of physical injury to another.
>
> Another consideration is a comparison to the crime of burglary. Burglary is dangerous because it can end in confrontation leading to violence. The

---

[5] *But cf. State v. Kelso*, No. E2000–01602–CCA–R3–CD, 2001 WL 681313, at \*3 (Tenn. Crim. App. June 18, 2001) ("We need not reach the question whether pursuing law enforcement officers or passengers who voluntarily accompany a driver are excluded from the categories of 'innocent bystanders' and 'other third parties.'").

same is true of vehicle flight, but to an even greater degree. The attempt to elude capture is a direct challenge to an officer's authority. It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase. The felon's conduct gives the officer reason to believe that the defendant has something more serious than a traffic violation to hide.

*Sykes*, 131 S. Ct. at 2273 (internal citations omitted).

The Supreme Court further recognized that pursuing officers may consider themselves duty bound to escalate their response to ensure the eluding party is apprehended, and that when the pursuit ends, it is sometimes necessary for officers to approach the vehicle with guns drawn to make an arrest. *Id.* at 2273-74. This expected confrontation between suspect and police officer places property and persons at serious risk of injury. *Id.* at 2274. Using unequivocal language, the Court further stated:

Risk of violence is inherent to vehicle flight. Between the confrontations that initiate and terminate the incident, the intervening pursuit creates high risks of crashes. It presents more certain risk as a categorical matter than burglary. It is well known that when offenders use motor vehicles as their means of escape they create serious potential risks of physical injury to others. Flight from a law enforcement officer invites, even demands, pursuit. As that pursuit continues, the risk of an accident accumulates. And having chosen to flee, and thereby commit a crime, the perpetrator has all the more reason to seek to avoid capture.

Unlike burglaries, vehicle flights from an officer by definitional necessity occur when police are present, are flights in defiance of their instructions, and are effected with a vehicle that can be used in a way to cause serious potential risk of physical injury to another.

*Id.* at 2274 (citations omitted). Our reasoning in both *Young* and *Rogers* with respect to the Michigan and Tennessee statutes, respectively, is consistent with, and fully supported by, the Court's analysis in *Sykes* of vehicular flight under Indiana law.

The dissent recognizes that "many types of vehicular flight from police will pose a risk of injury to others equal to or greater than the risk posed by [burglary, extortion, arson, and crimes involving the use of explosives]," but finds Class E felony evading arrest categorically different from these types of flights because it only requires an intentional refusal to stop when ordered to do so by police. Judge White believes that

mere unwillingness to stop, without additional risky or evasive conduct, "does not, in the ordinary case, 'present[] a serious potential risk of physical injury to another.'" (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).  She relies on a distinction she sees in the cases between Class E and Class D felony evading arrest convictions.  In our view, however, these cases demonstrate merely that conduct constituting Class D felony evading arrest will, in the ordinary case, fall under the residual clause.  We fail to see how they show that conduct giving rise to a Class E felony conviction categorically does not "present[] a serious potential risk of physical injury to another."

The pattern that emerges clearly from these cases is that, provided a person's vehicular flight creates no *actual* risk of injury to others, or, if it does, creates it only in relation to pursuing officers, the person can be guilty only of a Class E felony.  *See State v. Turner*, 193 S.W.3d 522, 525 (Tenn. 2006); *e.g.*, *State v. Winters*, No. M2009-01164-CCA-R3-CD, 2011 WL 1085101, at *1 (Tenn. Crim. App. Mar. 24, 2011) (risk to officer); *State v. Rogers*, No. M2006-01339-CCA-R3-CD, 2007 WL 4245051, at *1 (Tenn. Crim. App. Dec. 4, 2007) (same); *State v. Burnette*, No. W2006-02092-CCA-R3-CD, 2007 WL 2822906, at *1-2 (Tenn. Crim. App. Sept. 28, 2007) (same); *State v. Medford*, No. W2002-00226-CCA-R3-CD, 2003 WL 22446575, at *1 (Tenn. Crim. App. Oct. 21, 2003) (same); *State v. Marable*, No. M1999-00576-CCA-R3-CD, 2001 WL 1028817, at *4 (Tenn. Crim. App. Sept. 7, 2001) (same); *State v. Johnson*, No. W2000-00386-CCA-R3-CD, 2001 WL 721082, at *1-4 (Tenn. Crim. App. June 26, 2001) (same); *State v. Gann*, No. 01C01-9704-CC-00164, 1998 WL 265495, at *1-2 (Tenn. Crim. App. May 27, 1998) (same).

The residual clause, of course, is not so restricted; it covers conduct that creates a serious *potential* risk of harm simply to "another," a term that, to be sure, includes pursuing police officers.  *Rogers*, 594 F.3d at 522.  Such potential risks to officers *always* are present in vehicular-flight cases, even if actual risk of harm to third parties is not, as officers must eventually confront those who have already once intentionally disregarded their lawful authority.  *See Sykes*, 131 S. Ct. at 2274 (noting that "[r]isk of violence is inherent to vehicle flight," and that such risk is created in part by

"confrontations that initiate and terminate the incident"); *id.* ("Unlike burglaries, vehicle flights from an officer by definitional necessity occur when police are present, are flights in defiance of their instructions, and are effected with a vehicle that can be used in a way to cause serious potential risks of physical injury to another."); *cf. James*, 550 U.S. at 203 (noting that the "main risk of burglary arises . . . from the possibility of a face-to-face confrontation between the burglar and a third party – whether an occupant, a police officer, or a bystander – who comes to investigate").

Finally, the dissent relies somewhat on the fact that the Supreme Court denied certiorari in at least twenty vehicular-flight cases last term, but granted it and vacated the judgment only in *Rogers*. We choose not to read too much into this fact. In our view, it merely demonstrates the Supreme Court's recognition that, of all the certiorari petitions pending before it when *Sykes* was issued, only *Rogers* involved the type of state statute about which the Court reserved decision and therefore believed deserved a second look in light of *Sykes*.

### III.

We have fully considered the effect of the Supreme Court's recent decision in *Sykes*. Nothing in the decision causes us to reconsider our holding in *Rogers* that Class E felony evading arrest under Tennessee law, Tenn. Ann. Code § 39-16-603(b)(1), is a violent felony under the ACCA. For these reasons, we affirm.

———————

**DISSENT**

———————

HELENE N. WHITE, Circuit Judge, (dissenting). I respectfully dissent. I would reverse the sentence and remand for resentencing without application of the Armed Career Criminal provision of the Guidelines in light of *Sykes v. United States*, 131 S. Ct. 2267 (2011).

**I**

I agree with the majority that this appeal involves the type of state statute about which *Sykes* reserved discussion – the Court specifically declined to address proper interpretation of statutes like Tennessee's, where the state both distinguishes between simple vehicular flight and vehicular flight that poses a risk of injury to others, *and* punishes the latter more harshly than the former. However, I do not agree that *Sykes* supports that Class E felony evading arrest in Tennessee is a violent felony under the ACCA.

The salience of the difference between Class E and Class D felony evading arrest under Tennessee law is demonstrated by Tennessee cases. In *State v. Turner*, 193 S.W.3d 522, 525 (Tenn. 2006), the Tennessee Supreme Court held that for conviction of Class D felony evading arrest, "[a]ll that need be shown is that the defendant evaded arrest and that in so doing, he created the *risk* of death or injury." The court determined that the defendant's conduct in fleeing from police at speeds reaching 50 to 60 miles per hour in a residential neighborhood, "passing a vehicle in a no-pass zone and ignoring a four-way stop sign" was sufficient to sustain a conviction for Class D evading arrest because "the defendant created a risk of death or injury to every driver and pedestrian in his proximity as he operated his vehicle heedless of the traffic signals." *Id.* at 524-25. Thus, "[t]he Tennessee Supreme Court has held that proof establishing that other motorists were on the street or that pedestrians were walking along a sidewalk during a chase is sufficient to sustain a conviction for Class D felony evading arrest with risk to others." *State v. Johnson*, No. M2007-01644-CCA-R3-CD, 2009 WL 2567729,

at *10 (Tenn. Crim. App. Aug. 18, 2009) (citing *Turner*, 193 S.W.3d at 525). Consistent with this interpretation, in *State v. Menifee*, No. M2005-00708-CCA-R3-CD, 2006 WL 2206067, at *4 (Tenn. Crim. App. July 31, 2006), the Tennessee Court of Criminal Appeals held that the defendant's conduct in fleeing from police at a high rate of speed while weaving in and out of traffic was sufficient to prove creation of the risk of death or injury of others, thus moving the offense out of the definition of Class E evading arrest and into the Class D felony. *See also State v. White*, No. M2005-01991-CCA-R3-CD, 2006 WL 2956505, at *3 (Tenn. Crim. App. Oct. 13, 2006) ("The presence of other vehicles on the street during the course of a high speed chase supports a finding that Defendant's conduct placed others in danger."). Conviction of the Class D requires only some sort of reckless driving on a public road and the presence of pedestrians or other motorists.

The threshold for conviction of the Class E felony is even lower, and contemplates an absence of a risk of injury to others. Mere failure to obey an officer's signal to stop, without more, satisfies only the elements of the Class E felony, and does not, under Tennessee law, establish a risk to the safety of others. *See State v. Calloway*, No. M2004-01118-CCA-R3-CD, 2005 WL 1307800, at *5 (Tenn. Crim. App. June 2, 2005) ("There is no evidence that Defendant's driving created any risk of death or injury while he was crossing [the public roadway]."). The Class E crime covers only the least risk-inducing examples of vehicular flight.

*Sykes* instructs us to find guidance in determining whether a particular offense is a violent felony by comparing it to the "offenses enumerated in § 924(e)(2)(B)(ii)—burglary, extortion, arson, and crimes involving use of explosives." *Sykes*, 131 S. Ct. at 2273. As discussed in *Sykes*, many types of vehicular flight from police will pose a risk of injury to others equal to or greater than the risk posed by these offenses. I cannot say, however, that the risk inherent in Class E evading arrest in Tennessee rises to this level. All that is required for conviction of Class E evading arrest is that the defendant: "(a) was operating a motor vehicle on a street, road, alley, or highway; (b) received a signal from a law enforcement officer to stop; (c) after receiving

such signal, fled or attempted to elude the officer; and (d) acted intentionally." *State v. Rogers*, No. M2006-01339-CCA-R3-CD, 2007 WL 4245051, at *2 (Tenn. Crim. App. Dec. 4, 2007). "What is determinative of the issue of whether [a defendant] was fleeing the police is not his speed but, instead, the fact that he intentionally continued driving, after having received a signal to stop . . . ." *State v. Johnson*, No. W2000-00386-CCA-R3-CD, 2001 WL 721082, at *7 (Tenn. Crim. App. June 26, 2001). Mere "unwilling[ness] to stop when signaled to do so by a law enforcement officer," *id.*, without any additional risky or evasive conduct, does not, in the ordinary case, "present[] a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).[1]

Further, on the same day the Supreme Court *granted* certiorari and summarily vacated the Sixth Circuit's judgment in *Rogers*, it *denied* certiorari in at least 20 other cases raising the question whether convictions under state vehicular-flight statutes constitute convictions of violent felonies.[2] The majority of those cases involved

---

[1] This conclusion is consistent with the Eleventh Circuit's (pre-*Sykes*) analysis in *United States v. Harrison*, 558 F.3d 1280 (11th Cir. 2009). There, the court considered whether third-degree vehicular flight under Florida law was a violent felony. *Id.* at 1290 & n.16. The Florida statute distinguished between simple vehicular flight and aggravated vehicular flight, with the latter defined as vehicular flight where the fleeing person "drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property." *Id.* (quoting Fla. Stat. § 316.1935(3)). Simple vehicular flight was a misdemeanor and simple vehicular flight from a police officer who has activated his or her siren and lights was a third-degree felony, while aggravated vehicular flight was a second-degree felony. *Id.* at 1291. The court determined that commission of the third-degree felony under the statute was not a "violent felony" because "the nature of [such] crime, as ordinarily committed, does not involve the same high level of risk. Neither high speed nor reckless driving is a statutory element of the Florida crime at issue here." *Id.* at 1294. The same logic applies here.

[2] *See United States v. Lee*, 631 F.3d 1343 (11th Cir. 2011), *cert. denied*, 130 S. Ct. 3036 (June 20, 2011); *United States v. Dismuke*, 593 F.3d 582 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 3018 (June 20, 2011); *United States v. Dunson*, 603 F.3d 1023 (7th Cir. 2010) (per curiam), *cert. denied*, 131 S. Ct. 3020 (June 20, 2011); *Welch v. United States*, 604 F.3d 408 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 3019 (June 20, 2011); *United States v. Womack*, 610 F.3d 427 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 3020 (June 20, 2011); *United States v. Malloy*, 614 F.3d 852 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 3023 (June 20, 2011); *United States v. Clay*, 622 F.3d 892 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 3023 (June 20, 2011); *United States v. McConnell*, 605 F.3d 822 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 3021 (June 20, 2011); *United States v. Wise*, 597 F.3d 1141 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 3020 (June 20, 2011); *United States v. Warren*, 383 F. App'x 360 (4th Cir. 2010) (unpublished), *cert. denied*, 131 S. Ct. 3020 (June 20, 2011); *United States v. Petersen*, 383 F. App'x 458 (5th Cir. 2010) (unpublished), *cert. denied*, 131 S. Ct. 3020 (June 20, 2011); *United States v. Ramos*, 376 F. App'x 457 (5th Cir. 2010) (unpublished), *cert. denied*, 131 S. Ct. 3019 (June 20, 2011); *United States v. Noah*, 401 F. App'x 54 (6th Cir. 2010) (unpublished), *cert. denied*, 131 S. Ct. 3025 (June 20, 2011); *United States v. Stephens*, 393 F. App'x 340 (6th Cir. 2010) (unpublished), *cert. denied*, 131 S. Ct. 3023 (June 20, 2011); *United States v. Askew*, 384 F. App'x 504 (7th Cir. 2010) (unpublished), *cert. denied*, 131 S. Ct. 3022 (June 20, 2011); *United States v. Members*, 376 F. App'x 633 (7th Cir. 2010) (unpublished), *cert. denied*, 131 S. Ct. 3019 (June 20, 2011); *United States v. Partee*, 373 F. App'x 602 (7th Cir. 2010) (unpublished), *cert. denied*, 131 S. Ct. 3019 (June 20, 2011); *United States v. Atkins*, 379 F. App'x 762 (10th Cir. 2010) (unpublished), *cert. denied*, 131 S. Ct. 3022 (June 20, 2011); *United States v. Ethingor*, 388 F. App'x 858 (11th Cir. 2010) (unpublished), *cert.*

convictions under statutory provisions that specify, as an element of the offense, that the defendant's flight from police actually created a risk of physical injury to others. *See Lee*, 631 F.3d at 1347 (conviction under New Jersey statute making it a crime of the second degree to flee from police in a vehicle "if the flight or attempt to elude creates a risk of death or injury to any person" (quoting N.J. Stat. Ann. § 2C:29-2b); statute also includes simple-vehicular-flight provision designated as lesser-degree crime); *Dismuke*, 593 F.3d at 590 (conviction under Wisconsin statute criminalizing vehicular flight from police in a manner that "endanger[s] the operation of the police vehicle, or other traffic officer or other vehicles or pedestrians" or where the fleeing vehicle operator "increase[s] the speed of the operator's vehicle or extinguish[es] the lights of the vehicle in an attempt to elude or flee" (quoting Wis. Stat. § 346.04(3))); *Partee*, 373 F. App'x at 603 (same); *Welch*, 604 F.3d at 417 (conviction under Illinois statute making fleeing from a police officer an aggravated offense if the flight "(1) is at a rate of speed at least 21 miles per hour over the legal speed limit; (2) causes bodily injury to any individual; (3) causes damage in excess of $300 to property; or (4) involves disobedience of 2 or more official traffic control devices" (quoting 625 Ill. Comp. Stat. 5/11-204.1(a))); *Womack*, 610 F.3d at 433 & n.7 (same); *Malloy*, 614 F.3d at 862, 865 (conviction under Iowa vehicular-flight statute that makes it a class "D" felony to flee from law enforcement "and in doing so exceed[] the speed limit by twenty-five miles per hour or more" while simultaneously either "(1) committing another felony, (2) operating under the influence of drugs or alcohol or possessing a controlled substance, or (3) injuring [another] person" (citing Iowa Code § 321.279(3)(a)-(c))); *Clay*, 622 F.3d at 895 (conviction under Iowa statute making it an "aggravated misdemeanor" to flee police while "exceed[ing] the speed limit by twenty-five miles per hour or more" (quoting Iowa Code § 321.279(2))); *McConnell*, 605 F.3d at 826 (conviction under subsection of Kansas vehicular-flight statute making it a felony to be "involved in any motor vehicle accident or intentionally cause[] damage to property" while fleeing from police (quoting Kan. Stat. Ann. § 8-1568(b)(1)(D)); statute also contains simple-vehicular-flight

---

*denied*, 131 S. Ct. 3022 (June 20, 2011); *United States v. Harris*, 586 F.3d 1283 (11th Cir. 2009), *cert. denied*, 131 S. Ct. 3018 (June 20, 2011).

provision designated as lesser grade of crime); *Warren*, 383 F. App'x at 363 (concluding that the defendant's "crime [under North Carolina law] of intentional fleeing to elude arrest, coupled with the aggravating factors of speeding in excess of fifteen miles above the posted speed limit and reckless driving," is a violent felony); *Stephens*, 393 F. App'x at 343 (conviction for fleeing and eluding in the third degree under Michigan law, which requires that the driver "increas[e] the speed of the vehicle, extinguish[] the lights of the vehicle, or otherwise attempt[] to flee," and that the violation "result[] in a collision or accident," "occur in an area where the speed limit is 35 miles an hour or less" or that the driver has a previous vehicular-flight conviction (quoting Mich. Comp. Laws § 750.479a(1), (3))); *Askew*, 384 F. App'x at 506-07 (conviction under Minnesota vehicular-flight statute including in definition of "flee" "to increase speed [or] extinguish motor vehicle headlights or taillights" (quoting Minn. Stat. § 609.487, subd. 1)); *Atkins*, 379 F. App'x at 764 (conviction under Colorado vehicular-eluding statute that includes as element of the offense that the defendant must have "operate[d] his or her vehicle in a reckless manner" (quoting Colo. Rev. Stat. § 18-9-116.5)); *Harris*, 586 F.3d at 1284 (conviction under Florida statute making it a second-degree felony to flee from police by "[d]riv[ing] at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property" (quoting Fla. Stat. § 316.1935(3)(a))); *Ethingor*, 388 F. App'x at 861-62 (same).

A minority of cases involve statutes that target both simple and aggravated vehicular flight, but that, as in the Indiana statute discussed in *Sykes*, treat both offenses as equally serious and subject defendants to identical sentences for violation of either. *See Wise*, 597 F.3d at 1143-44 (conviction under Utah statute making it crimes of equal degree to fail to stop after a signal by a police officer either while operating a vehicle so as "to interfere with or endanger the operation of any vehicle or person; or attempt to flee or elude a peace officer by vehicle or other means" (quoting Utah Code Ann. § 41-6a-210(1)(a))); *Dunson*, 603 F.3d at 1023 (discussing same Indiana statute at issue in *Sykes*).

To be sure, the denial of a petition for a writ of certiorari carries no precedential effect. *See Maryland v. Baltimore Radio Show*, 338 U.S. 912, 919 (1950) (opinion of Frankfurter, J., respecting denial of certiorari) ("[T]his Court has rigorously insisted that [a denial of certiorari] carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review."); *United States v. Carver*, 260 U.S. 482, 490 (1923) ("The denial of a writ of certiorari imports no expression of opinion upon the merits of the case . . . ."). However, it is worth recognizing that on the same day the Supreme Court denied certiorari in at least 20 cases raising the question whether convictions under state vehicular-flight statutes constituted violent felonies, but granted certiorari and vacated for further consideration in light of *Sykes* in only one case, *Rogers*, which turns on the same statutory provision at issue here. The salient difference between those cases and both *Rogers* and this one is that the defendants there were convicted under statutory provisions that either 1) clearly specified that the defendant's conduct must carry some heightened risk of injury to others, or 2) contained provisions criminalizing both "simple" and "aggravated" vehicular flight, but treated both types as equally serious offenses. In this case, Doyle was convicted under the simple-vehicular-flight provision of Tennessee's flight statute (Class E felony evading arrest), as distinguished from the state's aggravated-vehicular-flight provision that requires "creat[ion of] a risk of death or injury to innocent bystanders or other third parties" (Class D felony evading arrest). This distinction takes this case (and *Rogers*) out of the holding of *Sykes*, as highlighted by the Court's grant of certiorari and summary vacatur in *Rogers*.[3]

Tennessee has distinguished between crimes of vehicular flight that create a risk of injury to others (Class D felony) and crimes of vehicular flight that merely involve intentional failure to follow a police request to stop (Class E felony). The two offenses

---

[3]Among the cases in which the Supreme Court denied certiorari was *United States v. Noah*, 401 F. App'x 54 (6th Cir. 2010) (unpublished), *cert. denied*, 131 S. Ct. 3025 (June 20, 2011). There, the defendant was convicted in Tennessee of Class D felony evading arrest. Doyle's situation obviously differs from the defendant's in *Noah* because here Doyle was convicted of Class E felony evading arrest, which lacks the risk-to-third-parties element. The court denied certiorari in *Noah*, but granted certiorari and vacated in *Rogers*, which addresses the identical question presented here. This further underscores that Doyle's conviction of Class E felony evading arrest instead of the Class D crime is a distinction with a significant difference.

are classed as different degrees of crime, and are subject to different punishments. And Class E felony evading arrest is a lesser-included offense of Class D felony evading arrest. *State v. Calloway*, No. M2004-01118-CCA-R3-CD, 2005 WL 1307800, at *6 (Tenn. Crim. App. June 2, 2005). Doyle's conviction of Class E felony evading arrest thus falls squarely within the category of cases about which the Supreme Court reserved decision in *Sykes*. *Sykes*, 131 S. Ct. at 2295 (Kagan, J., dissenting) ("[T]he Court reserve[d] the question whether a vehicular flight provision . . . is a crime of violence under ACCA 'where that offense carries a less severe penalty than [a greater] offense that includes it.'" (second and fourth alterations in original)).

The operative question, then, remains whether, "as a categorical matter, [Doyle's conviction] presents a serious potential risk of physical injury to another." *Id.* at 2273 (maj. op.). This is a close question in light of *Sykes*, given its broad conclusion that vehicular flight can create a risk of injury to others "[e]ven if the criminal attempting to elude capture drives without going at full speed or going the wrong way." *Id.* However, given the ease with which Class D felony evading arrest can be proven in Tennessee (requiring only some indication of recklessness plus the presence of pedestrians or other motorists), Class E evading arrest is reserved for only the most innocuous types of vehicular flight.[4] In the particular context of the Tennessee statute, where the flight element of the offense is established when the defendant "intentionally continue[s] driving[] after having received a signal to stop," *Johnson*, 2011 WL 721082, at *7, Class E felony evading arrest does not rise to the level of a violent felony, as it typically covers the mere knowing failure to obey a police order to stop, without any of the additional risk contemplated by Tennessee's Class D felony provision.

I would therefore hold that Doyle's prior convictions under Tenn. Code Ann. § 39-16-603(b) do not constitute violent felonies and remand for resentencing without application of the Armed Career Criminal provision.

---

[4]It does not matter that Doyle's actual conduct likely created a risk of injury to others (and that he probably could have been charged with the Class D felony). Under the categorical approach, courts "look only to the statutory definition of the prior offense, and . . . not . . . the particular facts disclosed by the record of conviction." *Id.* at 2272 (quoting *James*, 550 U.S. at 202).