IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 03, 2015


**STATE OF TENNESSEE v. JOSEPH CORDELL BREWER, III**


**Appeal from the Circuit Court for Obion County
No. CC13CR143      William B. Acree, Judge**

---

**No. W2014-01347-CCA-R3-CD   -   Filed June 1, 2015**

---


The defendant, Joseph Cordell Brewer, III, was convicted of theft of property of $10,000 or more but less than $60,000, a Class C felony; evading arrest, a Class D felony; and evading arrest, a Class A misdemeanor. The trial court sentenced the defendant as a Range III, persistent offender to serve twelve years for the theft of property conviction, twelve years as a Range IV, career offender for the felony evading arrest conviction, and eleven months and twenty-nine days for the misdemeanor evading arrest conviction. The trial court ordered the sentences to be served concurrently to each other but consecutively to a prior sentence because the offenses were committed while the defendant was on parole. On appeal, the defendant argues that the evidence is insufficient to sustain his convictions for theft of property and Class D felony evading arrest. He also argues that the trial court improperly classified him as a persistent and career offender. After our review of the briefs, the record, and the applicable law, we conclude that the evidence is sufficient to sustain the defendant's conviction for theft of property but that his conviction for Class D felony evading arrest should be reduced to Class E felony evading arrest. Further, we conclude that the trial court properly sentenced the defendant as a persistent and career offender, but we remand the case for resentencing on the Class E felony.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; Case Remanded**


JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Joseph P. Atnip (on appeal), District Public Defender; and William K. Randoph (at trial), Assistant District Public Defender, for the appellant, Joseph Cordell Brewer, III.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Thomas A. Thomas, District Attorney General; and Jim Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

This case arose after the defendant stole Scott and Heather Riley's 2009 Honda Odyssey minivan and led police on a high-speed chase as they attempted to apprehend him. Officer James Key testified that he was a police officer in the Union City Police Department. Just before midnight on the evening of the incident, Officer Key was on West Main Street "running radar." He saw the defendant, who was walking down the road, approach a semi-truck parked on the side of the road. After the semi-truck drove away, Officer Key approached the man to check his identification.

Officer Key asked the defendant where he was going, and the defendant told him that he was going to his sister's home around Woodland Street. Officer Key noticed a cut on the defendant's thumb, which the defendant said he received attempting to open a can of paint earlier in the week. The defendant explained that his sister did not have a vehicle to pick him up and that he planned to walk to her home. Officer Key wrote down the defendant's name and driver's license number in his "contact sheet," which is a list that officers keep to record the names of individuals that they speak with during their shift.

After the conversation with the defendant, Officer Key continued his patrol. He received a prowling call about a vehicle with a door open and an interior light on at a residence on West Main Street, near the area where he saw the defendant. He estimated that twenty to thirty minutes elapsed between the call and his conversation with the defendant. On cross-examination, Officer Key agreed that he testified at a preliminary hearing that he stopped the defendant around 11:00 p.m. and received the first prowling call around 1:30 a.m. Officer Key drove to the house and investigated the vehicle in question and the neighbor's vehicle. Nothing was reported stolen or missing, and Officer Key continued his investigation for potential prowlers. The defendant had continued walking in a westerly direction, and Officer Key also went west to investigate a possible prowler. Officer Ben Hudson also responded to the prowling call, and Officer Key spoke to him about his interaction with the defendant.

Officer Hudson testified that the Union City Police Department received two separate prowling calls on the evening of the incident. The first call was received at 1:16 a.m. from a residence on West Main Street. He estimated that the address was likely 150 or 200 yards from the Rileys' address, "as the crow flies." Along with Officer Key, he responded to the first prowling call, and he estimated that he arrived at the scene around 1:20 a.m. Twenty-two minutes after the first call, officers received a second prowling call at an address on Macon Drive, which was about a quarter of a mile away from the first prowling call. Officer Hudson proceeded to the neighborhood and pulled into a parking lot at the corner of the neighborhood, while other officers went into the neighborhood. He turned off his vehicle and his lights and exited the vehicle to survey the area "in case [the officers] flushed somebody out." He heard Officer Key say that the complainant on Macon Drive described seeing an individual wearing a black shirt and a black hat in the area.

While Officer Hudson was standing outside of his vehicle, he observed a van backing out of a driveway across the street from a subdivision on Lake Drive. Officer Hudson instructed another officer to identify the driver and his clothing. The officer was unable to do so because his vision was obscured by the van's oncoming headlights. Officer Hudson witnessed the van drive by his location, but he also was unable to identify the driver.

Officer John Buchanan testified that he also responded to the second prowler call. When he was en route to the Macon Drive address, he heard Officer Hudson asking for someone to identify the driver of a blue minivan on Lake Drive. Officer Buchanan turned left onto Highway 22 and was facing west. He saw the minivan coming toward him from the east, and the van stopped at a stop sign. At that moment, Officer Buchanan estimated that he was about ten feet from the van, and he shone his spotlight on the driver to identify him. He illuminated the driver for several seconds, and he testified that he was able to get a good look at the driver. He saw that the driver was a black male wearing a "black ball cap" and "a black shirt." When he later ran the defendant's driver's license number and obtained a photo identification of the defendant, he identified the defendant as the individual driving the van. He agreed that there was no "doubt in [his] mind" that the driver was the defendant. On cross-examination, he agreed that he testified at the preliminary hearing that the driver's cap was pulled down, preventing Officer Buchanan from seeing any part of the driver's face and head above his nose.

Officer Buchanan shared the description of the driver with Officer Hudson, who advised him to stop the vehicle because the description matched that of the prowler. Officer Buchanan activated his emergency lights to stop the van, which was going the

3

speed limit at the time. The driver of the van applied the brakes but then "sped off." Officer Buchanan began to pursue the vehicle with his lights and siren activated, and Officer Hudson testified that he witnessed Officer Buchanan activate his blue lights. Initially, Officer Buchanan was able to keep up with the minivan by driving about eighty miles per hour, but the van slowly began to pull away. When Officer Buchanan approached an intersection where the light was red, he slowed his speed. He terminated his high-speed pursuit about 100 yards away from the light because he could not see if there was any traffic approaching the intersection. The minivan continued driving, speeding through the red light without slowing down "doing about a hundred" miles per hour.

Officer Buchanan observed the vehicle make a left turn on Fifth Street, and he made the turn as well. After turning on Fifth Street, Officer Buchanan noticed that the minivan had crashed into a chainlink fence. When Officer Buchanan approached the minivan, he observed that it was still running and placed in drive but was unoccupied. Officer Buchanan did not see anyone at the scene, and Officer Key later told him about his interaction with the defendant. Officer Buchanan ran the defendant's driver's license number to locate his photo identification. After seeing the defendant's driver's license photograph, he identified the defendant as the driver of the minivan and agreed that there was no doubt in his mind that the defendant was the driver.

Scott Riley and Rachel Foren testified regarding the value of the van. Mr. Riley testified that he lived on Lake Drive and owned a 2009 Honda Odyssey minivan. He estimated that the vehicle was worth $15,000 to $20,000. Ms. Foren was a claims representative for Tennessee Farmers Mutual Insurance. She became involved in the case when the Rileys made a claim that their 2009 Honda Odyssey had been stolen. Ms. Foren testified that the repairs to the minivan cost "right around $5,800" and that had the vehicle been damaged to the extent that repair was not feasible, the vehicle would have been valued at $15,050.

At the conclusion of the proof, the jury convicted the defendant of Class C theft of property in Count 1, Class D felony evading arrest in Count 2, and Class A misdemeanor evading arrest in Count 3.

Prior to the trial, the State filed a notice to sentence the defendant as a persistent and career offender. This notice identified thirty-two different felony convictions from Tennessee, Kentucky, and Illinois. The accompanying information for all of the Tennessee convictions included the classification of the felony, along with the date the

offense was committed, the date on which the judgment was entered, the docket number, and the sentencing court. The date of the offense was not included for several of the out-of-state convictions.

At the sentencing hearing, the State indicated that it had filed a presentence report. When asked if there were any objections to the report, trial counsel responded, "Your Honor, we cannot stipulate to the -- in particular, we cannot stipulate to the prior record." The trial court asked if trial counsel knew of anything wrong with the report, and trial counsel responded, "Well, Your Honor, we just are not in a position to stipulate to it." The State then called Evelyn Dwyer, who testified that she prepared the presentence report. The prosecutor asked Ms. Dwyer to state her findings regarding the defendant's prior record, and Ms. Dwyer asked if the State wanted her to read each of the defendant's prior convictions aloud. The trial court told her that she did not need to do so and asked that the report be made an exhibit to Ms. Dwyer's testimony. Ms. Dwyer did not testify further regarding the presentence report. The defendant was afforded the opportunity to cross-examine Ms. Dwyer, and he did not have any questions for the witness. Ms. Dwyer signed the report underneath the phrase "unless otherwise noted, the information contained herein has been verified and is accurate to the best of this officer's knowledge."

During argument, trial counsel stated the following about the presentence report:

[TRIAL COUNSEL]: If the Court please, that was one of the issues, that there in Page 14, that we had noticed. And there's --you know, we didn't feel that it was in our position or best interest to be pointing out issues that there may be within this --

THE COURT: I understand

[TRIAL COUNSEL]: I mean, there's a lot of other issues here. There's -- you know, starting on Page 7, there's a conviction offense not defined, charged offense not defined. This is out of Fulton County. And there's more out of Fulton County. Down there towards the bottom, there's two more in the same position, not defined, not defined, either the charge or the conviction. The same thing on one, two, three more cases on the next one, Page 8. It's just -- there's just issues like that through here. And on to Page 12, there's one, two, three cases there without disposition, and then another one, two, three, four, five on Page 13.

THE COURT: You're not suggesting that these are improper -- that

he wasn't convicted of these offenses; you're stating that the record reflects that they're incomplete?

[TRIAL COUNSEL]: I don't know, Your Honor. There's just no proof of it because it says "not defined." I mean, we don't know. I'm just -- I mean, they don't even show what he was charged with, mu[ch] less convicted.

THE COURT: Okay.

When imposing the defendant's sentence, the trial court stated that it considered the evidence at trial and the sentencing hearing, along with the presentence report and the testimony from the sentencing hearing. The court also considered the purposes and principles of the sentencing guidelines. The court found that the defendant was a Range III offender with respect to the conviction in Count 1 and a Range IV offender with respect to the conviction in Count 2. The court observed that the defendant's criminal record was "quite disturbing," as the defendant had fifty prior criminal convictions. The court found that the defendant's prior criminal history was an enhancement factor, and the court did not find any mitigating factors. The trial court sentenced the defendant to twelve years for Counts 1 and 2 and eleven months and twenty-nine days for Count 3. The court ordered the sentences to be served concurrently to each other but consecutively to the defendant's 2008 conviction because the offenses were committed while the defendant was on parole.

At the motion for new trial, trial counsel argued that there was no proof that the defendant was a Range III and Range IV offender because certified copies of the judgments of conviction were not entered into evidence and trial counsel did not stipulate to the presentence report. Trial counsel agreed that the issue of the defendant's range classification was not raised at the sentencing hearing. The State conceded that the defendant may have possessed valid grounds to object to several of the out-of-state convictions but argued that there were ten qualifying convictions from the presentence report that were committed in Obion County. The State contended that the Obion County convictions alone were sufficient to establish the defendant's offender range. The trial court denied the motion in part but continued the motion to permit the Obion County Circuit Court Clerk to research county records to determine whether there were ten valid convictions that could have been considered in determining the defendant's offender status.

At the renewed motion for new trial, Harry Johnson testified that he was the Circuit Court Clerk for Obion County. Mr. Johnson testified that he retrieved the files of the defendant's previous convictions in Obion County. He testified that in case number

CC-08-CR-9, the defendant pled guilty to two counts of burglary of a vehicle, Class E felonies, and one count of Class E felony theft of property. In case number CC-08-CR-8, the defendant pled guilty to Class C felony theft of property and Class D felony evading arrest. For docket number 1-14, the defendant pled guilty to Class E felony evading arrest and Class C felony theft of property. In docket number 9-281, the defendant pled guilty to Class D felony theft of property and Class E evading arrest. In docket number 9-19, the defendant pled guilty to Class C felony theft of property. In docket number 5576, the defendant pled guilty to second degree burglary, "second offense." The conviction did not have an offense class, and the trial court stated that because it was a second offense, it would be classified as a Class C felony. In docket number 5442, the defendant pled guilty to fraudulent breach of trust under $200, and the State submitted that the offense was a Class D or E qualifying felony. In docket number 5106, the defendant pled guilty to escape while being held on felony charges, which the State submitted was a Class E felony. In docket number 5105, the defendant pled guilty to second-degree burglary, which the State submitted was a Class C felony. In docket number 5103, the defendant pled guilty to petit larceny, which the State submitted was a Class E felony. Trial counsel did not have any questions for Mr. Johnson on cross-examination and stated only that several of the out-of-state convictions occurred on the same day and should be considered as one conviction for the purpose of range classification.

Counting the offenses that occurred on the same date as only one offense for the purposes of the defendant's offender status, the trial court found that the defendant was properly sentenced as a persistent and career offender. The trial court denied the motion for new trial, and the defendant timely filed a notice of appeal. We proceed to consider his claims.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant contends that the evidence is insufficient to sustain his conviction of theft of property of $10,000 or more but less than $60,000. He also contends that the evidence is insufficient to sustain his conviction for Class D felony evading arrest and that the conviction should be reduced to a Class E felony.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable

and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

## A. Theft of Property

The defendant contends that the evidence is not sufficient to sustain his conviction. Specifically, he argues that the evidence at trial did not show that he was the driver of the minivan that officers witnessed on the road.

Tennessee Code Annotated section 39-14-103(a) (2010) states that "[a] person commits theft of property if, with the intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tennessee Code Annotated section 39-11-106(a)(28) defines property as "anything of value, including, but not limited to, money, real estate, tangible or intangible personal property, including anything severed from land, library material, contract rights, choses-in-action, interests in or claims to wealth, credit, admission or transportation tickets, captured or domestic animals, food and drink, electric or other power." The offense is a Class C felony if the value of the property is $10,000 or more but less than $60,000. T.C.A. § 39-14-105(a)(4).

The testimony of a witness identifying the defendant as the perpetrator of a crime "is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). Inconsistency, inaccuracy, and omissions in the identification of the defendant are questions for the jury to consider in apportioning the weight to give to the testimony of a witness otherwise able to positively identify the defendant. *Id.* (citing *Matthews*, 805 S.W.2d at 779). Because the jury resolves questions of witness credibility, this court will not disturb the verdict on appeal "unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a

8

reasonable doubt of the [defendant's] guilt." *Radley*, 29 S.W.3d at 537.

Viewing the evidence in the light most favorable to the State, Officer Key saw the defendant in an area near where officers received two separate prowling calls. Officer Hudson testified that both calls were close to the Riley residence. One of the callers identified the prowler as wearing a black shirt and a black hat. While investigating the second call, Officer Hudson was parked in a location that allowed him to see Lake Drive. He saw a van pulling out of a driveway on Lake Drive, and Mr. Riley testified that his van was parked in his driveway at Lake Drive. Officer Buchanan was able to get a good look at the driver, who was wearing a black shirt and a black hat. After seeing a driver's license photograph, Officer Buchanan identified the driver as the defendant. The jury was aware that Officer Buchanan only saw the defendant for a few seconds and was unable to see above the top of his nose. It was within their purview to credit his testimony that he was able to identify the defendant. We conclude that the evidence was sufficient to show that he was the driver of the Rileys' stolen minivan.

## B. Class D Felony Evading Arrest

The defendant argues that the evidence is insufficient to sustain his conviction for Class D felony evading arrest. He contends that because there was no proof that there were any other cars or pedestrians in the area, his conviction should be reduced to a Class E felony for evading arrest. The defendant is correct that in order to be guilty of the enhanced Class D felony of evading arrest, other cars or pedestrians must be in the vicinity or the zone of danger. After review, we conclude the State's proof lacking of other cars or pedestrians in the zone of danger and therefore reduce the Class D conviction to a Class E.

Tennessee Code Annotated section 39-16-603(b)(1) provides that "[i]t is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." A violation of this code section is a Class E felony unless "the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties, in which case a violation of subsection (b) is a Class D felony." T.C.A. § 39-16-603(b)(3).

In order to sustain a conviction for Class D felony evading arrest, "[a]ll that need be shown is that the defendant evaded arrest and that in so doing, he created the *risk* of death or injury." *State v. Turner*, 193 S.W.3d 522, 525 (Tenn. 2006) (emphasis in original) (citing *State v. Payne*, 7 S.W.3d 25 (Tenn. 1999)). The element of risk of death or injury is satisfied if the evidence shows that there were other motorists or pedestrians

in the area where the pursuit occurred. *See State v. Cross*, 362 S.W.3d 512, 523-24 (Tenn. 2012) (concluding that when the proof showed that the defendant passed two other vehicles on a blind curve at speeds of eighty to ninety miles per hour, the evidence was sufficient for a rational trier of fact to find that his flight created a risk of injury to the other two drivers); *see also State v. Joseph L. Johnson, Jr.*, No. M2007-01644-CCA-R3-CD, 2009 WL 2567729, at *10 (Tenn. Crim. App. Aug. 18, 2009) (concluding that evidence was sufficient when officers testified that other cars were on the road and pedestrians were on the sidewalk during the pursuit); *State v. Travis T. White*, No. M2005-01991-CCA-R3-CD, 2006 WL 2956505, at *3 (Tenn. Crim. App. Oct. 13, 2006) (concluding that officer's testimony that there were numerous cars on the street during a pursuit that occurred in both commercial and residential areas supported the inference that the vehicles were operated by "innocent bystanders or other third parties"). However, if the State does not show that there were innocent bystanders or other third parties on the road at the time of the flight, the evidence is insufficient to show a risk of death or injury. *See State v. Cantrell Lashone Winters*, No. M2009-01164-CCA-R3-CD, 2011 WL 1085101, at *6 (Tenn. Crim. App. Mar. 24, 2011) (concluding that when officer testified that there were no other vehicles near the intersection where the defendant ran a stop sign or pedestrians along the route that the defendant traveled, there was no proof from which a jury could have found that the defendant created a risk of death or injury to innocent bystanders or other third parties). If the evidence is insufficient to show that other motorists or pedestrians were in the area, this court will reduce a conviction of Class D felony evading arrest to a Class E felony. *State v. Long*, 45 S.W.3d 611, 622 (Tenn. Crim. App. 2000); *see* T.C.A. § 39-16-603(b)(3).

Here, the State did not present evidence of other vehicles or pedestrians in the area during the defendant's flight. Officer Buchanan testified that he could not see if traffic was approaching the intersection when he stopped his pursuit. Officer Hudson testified that he saw Officer Buchanan's brake lights at the intersection, but he did not testify that other cars were in the area. Tennessee Code Annotated section 39-16-603(b)(3) requires that the defendant create a risk of death or injury "to persons other than the defendant him or herself and the officer giving the signal to stop." *Cross*, 362 S.W.3d at 521. The proof showed that the only individuals in the area were the defendant and police officers. Although the pursuit occurred in a residential and commercial area, and the defendant did run a stop light at a high rate of speed, the State failed to present any proof from which a rational trier of fact could find that the defendant created "a risk of death or injury to innocent bystanders or other third parties." Therefore, we conclude that the defendant's conviction of Class D felony evading arrest must be reduced to a conviction of Class E felony evading arrest.

## II. Sentencing

The defendant contends that he should have been sentenced as a Range I offender because the State failed to provide proof of his prior convictions. He argues that the corrections officer did not testify regarding the contents of the report and that the report should have been excluded as "rank hearsay" because there were no certified copies of the prior convictions.

This court reviews challenges to the length of a sentence under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentences that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

The defendant contends that the State did not meet its burden of proving that the defendant was a persistent and career offender. The State bears the burden of establishing beyond a reasonable doubt that the defendant possesses the requisite number of prior felonies to qualify for a particular range. *State v. Jones*, 901 S.W.2d 393, 397 (Tenn. Crim. App. 1995); *State v. Jasper L. Vick*, No. W2005-00467-CCA-R3-CD, 2006 WL 722173, at *9 (Tenn. Crim. App. Mar. 22, 2006). In order to sentence a defendant as a Range III, persistent offender, the trial court must find beyond a reasonable doubt that the defendant has "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes." T.C.A. § 40-35-107(a)(1). In order to sentence a defendant as a Range IV, career offender, the trial court must find that the defendant has "[a]t least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony." T.C.A. § 40-35-108(a)(3). When determining a defendant's range classification, "[t]he original or certified copy of the court record of any prior felony conviction . . . is prima facie evidence that the defendant named in the record is the same defendant before the court, and is prima facie evidence of the facts set out in the record." T.C.A. § 40-35-202(a).

However, certified copies of prior convictions are not the only method available to establish the prior requisite convictions for a particular range classification. *State v. Fusco*, 404 S.W.3d 504, 534 (Tenn. Crim. App. 2012) (citing *State v. Danny Anderson*, 1986 WL 9307, at *3 (Tenn. Crim. App. Aug. 27, 1986)). The Sentencing Act allows for the admission of "reliable hearsay." T.C.A. § 40-35-209(b). A presentence report constitutes reliable hearsay. *State v. Baker*, 956 S.W.2d 8, 17 (Tenn. Crim. App. 1997). In order to admit the presentence report as reliable hearsay, two conditions must be met.

*State v. Taylor*, 744 S.W.2d 919, 921 (Tenn. Crim. App. 1987). First, the party opposing the evidence must receive a fair opportunity to rebut any hearsay admitted into evidence. *Taylor*, 744 S.W.2d 919, 921 (Tenn. Crim. App. 1987); T.C.A. § 40-35-209(b). Second, "indicia of reliability must be present to satisfy the due process requirement." *Taylor*, 744 S.W.2d at 921 (citations omitted); *see* T.C.A. § 40-35-209(b); *see also Fusco*, 404 S.W.3d at 535 (quoting *Danny Anderson*, 1986 WL 9307, at *3) ("'[P]rior convictions need not be certified when they are otherwise reliable and the defendant has been given the opportunity to rebut the evidence.'"). The trial court is entitled to rely on the presentence report "absent a showing that the report is based upon unreliable sources or is otherwise inaccurate." *State v. Richard J. Crossman*, No. 01C01-9311-CR-00394, 1994 WL 548712, at *6 (Tenn. Crim. App. Oct. 6, 1994).

We conclude that the trial court properly considered the presentence report in determining the defendant's offender classification. The State filed a notice of enhancement nearly five months prior to the defendant's trial, and the felony convictions in the presentence report were also listed in the State's notice, making the defendant aware of the convictions upon which the State intended to rely. Ms. Dwyer testified at the sentencing hearing, and the defendant chose not to cross-examine her or to present any evidence to rebut the convictions included in the presentence report. Ms. Dwyer testified that she prepared the presentence report, and she also signed the report underneath the phrase "unless otherwise noted, the information contained herein has been verified and is accurate to the best of this officer's knowledge," giving the report indicia of reliability. The evidence at the hearing on the motion for new trial confirmed the reliability of the report.

During closing arguments, the defendant argued that many of the charged and conviction offenses were listed as "undefined." The defendant is correct in that the presentence report reflects that many of the out-of-state convictions, along with one Tennessee conviction, did not define the charged or conviction offense. However, the report listed nine prior felonies in Tennessee, all of which included the date of the offense, the charged offense, the date of disposition, the identity of the convicting court, the disposition, and the conviction offense. These prior felonies included five Class C felonies, two Class D felonies, and two Class E felonies. Thus, even if all of the convictions where the charged or conviction offense was not defined were excluded from consideration, the information in the presentence report was sufficient to establish his classification as a Range III and Range IV offender. The defendant's five Class C felonies were sufficient to support his classification as a persistent offender for his theft of property conviction, and his combination of four prior Class D and E felonies, along with the prior class C felonies, supported his classification as a Range IV offender for his Class D felony conviction. We conclude that the trial court properly sentenced the

defendant as a Range III, persistent offender and a Range IV, career offender.  However, because we concluded that the defendant's conviction for Class D felony evading arrest must be reduced to a Class E felony conviction, we remand  for resentencing for the Class E felony.

## CONCLUSION

Based upon the foregoing, we affirm the judgment of the trial court in part, reverse the judgment in part, and remand in part.

_____
JOHN     EVERETT     WILLIAMS,
JUDGE