IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 9, 2024

**STATE OF TENNESSEE v. BRANDON L. HOLLIDAY**

**Appeal from the Circuit Court for Madison County**
**No. 22-24   Joseph T. Howell, Judge**

_____

**No. W2023-01097-CCA-R3-CD**

_____

A Madison County jury convicted the Appellant, Brandon L. Holliday, on multiple counts for evading arrest in a vehicle with risk of death or injury to innocent bystanders, disobeying a traffic signal, violating financial responsibility law, reckless driving, violation of duty upon striking a fixture upon a highway, and driving with a revoked license, for which he received an effective sentence of twelve years' confinement. On appeal, the Appellant argues that the evidence was insufficient to support his conviction of evading arrest because it did not establish that bystanders were at risk of death or injury during his flight. Upon review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JOHN W. CAMPBELL, SR., JJ., joined.

Jeremy Epperson, District Public Defender, and Kendall Stivers Jones (on appeal) and Parker Dixon and Tyler Graham (at trial), Assistant District Public Defenders, for the appellant, Brandon L. Holliday.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Jody Pickens, District Attorney General; and Bradley F. Champine, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Around 3 a.m. on January 9, 2021, officers with the Jackson Police Department (JPD) observed the Appellant drive into a nightclub parking lot, ran his vehicle registration, and determined that his license had been revoked. Shortly thereafter, officers observed the

Appellant drive out of the parking lot and run a stop sign. Upon signaling the Appellant to stop by activating their blue lights, the Appellant engaged in a highspeed chase that ended when he crashed into a utility pole in the parking lot of a twenty-four-hour laundromat. The Appellant fled on foot but was caught and arrested. On January 3, 2022, the Appellant was indicted by a Madison County grand jury for the above charges. He was also indicted for one count of failure to yield to a stop sign, which the State dismissed via nolle prosequi during trial.

At the Appellant's one-day trial on May 2, 2023, JPD Officer Robert Dakota Jaggers testified that between 12 a.m. and 1 a.m. on January 9, 2021, he was patrolling several local nightclubs when he observed the Appellant drive his vehicle, a black Chevy Monte Carlo, into the parking lot of Cody's, a local nightclub. Officer Jaggers recognized the Appellant and ran the registration for the Appellant's vehicle. A copy of the Appellant's driver's license history was entered into evidence. The vehicle was registered to the Appellant, and Officer Jaggers ran a second search on his name and driver's license number. The second search showed that the Appellant's license was revoked. Officer Jaggers noted that the picture on the driver's license matched the Appellant's appearance.

The Appellant entered Cody's before Officer Jaggers concluded his search, and he decided not to follow the Appellant into the club. Officer Jaggers called his partner Officer Andrew Washburn, informed him of the situation, and planned to conduct a traffic stop after the Appellant left the nightclub. After the nightclub closed, Officer Jaggers and Officer Washburn pulled their cars into a parking lot atop a hill, which enabled them to observe the Appellant leave the club, re-enter his vehicle, and drive away.

Officer Jaggers drove into the "cove" and began to follow the Appellant, and Officer Washburn took a different route. Officer Jaggers followed the Appellant away from traffic in search of a good location to conduct a traffic stop. Officer Jaggers observed the Appellant "slow roll[]" through a stop sign. The Appellant pulled onto the road, but Officer Jaggers did not initiate the traffic stop because he was waiting on Officer Washburn to return. Officer Washburn returned while Officer Jaggers was waiting at a red light, and when the light turned green, Officer Jaggers initiated his blue lights from behind the Appellant. Dash camera footage from Officer Jaggers' patrol vehicle was entered into evidence and played for the jury.

The dash camera footage shows Officer Jaggers following the Appellant in his patrol vehicle. The Appellant stopped at a stop sign, signaled with his blinker, and turned right. Officer Jaggers followed the Appellant onto the road and turned on his blue lights, signaling the Appellant to stop. The Appellant continued to drive in the passing lane and accelerated. Officer Jaggers pursued him, and at one point, the Appellant swerved into the oncoming lane. During the chase, the Appellant passed several cars and ran a red light.

The Appellant then rounded a corner, and when Officer Jaggers approached, the Appellant crashed into a utility pole in the parking lot of a twenty-four-hour laundromat. The Appellant opened the driver's side door of his car and fled from the officers on foot.

Officer Jaggers testified that he had to accelerate to speeds "[i]n excess of 110 miles an hour" to keep up with the Appellant during the chase and that the Appellant ran a red light. Officer Jaggers testified that the pursuit placed him and another vehicle at risk of danger or injury. Officer Jaggers explained that as he approached the Appellant's wrecked car, the utility pole had fallen across the road, and the road was closed "at least an hour" to remove it. Officer Jaggers pursued the Appellant on foot after the crash and shouted at him to stop and get on the ground. He estimated that he and Officer Washburn ran approximately 100 yards before they caught the Appellant. The Appellant stopped running as the officers reached him and did not resist when they apprehended him. The Appellant told the officers that he was on parole and "this [was] going to send him back."

On cross-examination, Officer Jaggers explained he did not recall if there was another name on the vehicle's registration. He agreed that the dash camera footage showed no traffic violation being committed prior to him turning on his lights. Officer Jaggers acknowledged that one of the cars the Appellant passed was in the right lane and that the Appellant was not near it while in the passing lane. He stated the second car the Appellant passed during the chase looked as if it had pulled over into the right lane because of the approaching police lights.

Officer Washburn, now a sergeant for the Jackson Police Department, testified consistently with the testimony of Officer Jaggers. He stated that on the night of the offense Officer Jaggers informed him that he saw a driver exiting a black Monte Carlo that smelled of marijuana. They met and ran the vehicle registration information and the name of the owner. Officer Jaggers informed Officer Washburn that Appellant was the driver and his license was revoked. The two officers conducted other service calls, and around 3 a.m., Officer Jaggers informed Officer Washburn that he saw the Appellant driving from the nightclub in the black Monte Carlo. Officer Jaggers followed the Appellant while Officer Washburn drove in a different direction in the event the Appellant drove a different route. When Officer Washburn eventually caught up with Officer Jaggers and the Appellant, Officer Jaggers attempted to initiate the traffic stop.

Officer Washburn stated he knew there would be a pursuit when he saw the Appellant's vehicle accelerate, and he activated his police lights. Officer Washburn's dash camera footage from the pursuit was played for the jury and entered into evidence. Officer Washburn testified that his speed was "well over 100" during the chase. Officer Washburn pursued the Appellant on foot after the Appellant crashed into the utility pole and fled, and his body camera footage was played for the jury and admitted into evidence.

The body camera footage depicts the Appellant handcuffed on the ground as Officer Jaggers and Officer Washburn stand over him. After approximately thirty seconds of footage, Officer Washburn reaches towards his vest and turns on the sound. The Appellant says, "It's over with, it's over with, man." Officer Washburn tells him, "You know what you most likely would have gotten? A citation." The Appellant asks, "What did I do?" Officer Washburn tells him, "Your license is revoked." He searched the Appellant and told him, "You ain't outrunning [Officer Jaggers]." The Appellant asks for a cigarette and is provided one. Officer Washburn asks, "Your name Brandon? Brandon Holliday?" The Appellant affirms, "Yeah." Officer Washburn continues, "You on parole, ain't you?" The Appellant replies, "No, I just got off." Officer Washburn asks when the Appellant got off of parole, and the Appellant replies that his "sentence expired." The Appellant asks what he was being charged with, and Officer Washburn tells him, "Well, you just caught a felony for evading arrest by a vehicle." Officer Jaggers adds, "And a hit and run," and the Appellant replies, "I didn't hit nobody." Officer Washburn tells him, "Leaving the scene of an accident, you hit that pole, man." The Appellant is walked to Officer Jaggers' patrol vehicle and placed inside. The video continues with Officer Washburn searching the Appellant's car and observing the wreckage.

Officer Washburn testified that they had chased the Appellant on foot "maybe [thirty] or [forty] yards or so." Officer Washburn clarified on cross-examination that the stop was not made because of the odor of marijuana emanating from the Appellant nor was the odor mentioned in Officer Jaggers' report. He also confirmed that the Appellant made a proper turn at the only stop sign present in the footage.

The State concluded its proof, and defense counsel made a motion for judgment of acquittal for the counts of failure to yield to a stop sign, reckless driving, and violation of duty upon striking a fixture upon a highway. The trial court denied the motion, but the State agreed to dismiss the count for failure to yield to a stop sign. The defense put on no proof, and the jury found the Appellant guilty of the remaining charges. At his sentencing hearing, the trial court sentenced the Appellant as a Range III persistent offender to an effective sentence of twelve years' confinement, and the judgments reflect that the Appellant's reckless driving conviction was merged with his felony evading arrest conviction.

On August 2, 2023, the Appellant filed a pro se notice of appeal before the motion for new trial, which this court stayed pending the trial court's ruling. Appellant's counsel then filed a motion for new trial, which the trial court denied. The stay on the Appellant's premature pro se notice of appeal was lifted, and his appeal was deemed timely filed.

## ANALYSIS

The sole issue presented for our review is whether the evidence is sufficient to support the Appellant's conviction of evading arrest with a vehicle that creates a risk of death or injury to innocent bystanders, pursuing law enforcement officers, or other third parties. He specifically argues the evidence does not show his pursuit placed any party in direct risk of harm during his flight. Relying on the dashcam footage showing the pursuing officers pausing at the red light and proceeding when they saw no traffic, the Appellant argues that "nothing other than his speed appears . . . to place the vehicles in danger as he passed them." The State responds, and we agree, that the evidence was sufficient to support his conviction.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). This court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)). Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

"[I]t is unlawful for any person, while operating a motor vehicle on any street . . . to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b)(1) (2021). A violation of this statute is a Class E felony unless the flight creates a risk of death or injury to innocent bystanders, pursuing law enforcement officers, or other third parties, at which point it is a Class D felony. Id. § 39-16-603(b)(3)(A), (B). "Proof

of actual death or injury is not necessary for conviction." State v. Cross, 362 S.W.3d 512, 524 (Tenn. 2012) (quoting State v. Turner, 193 S.W.3d 522, 525 (Tenn. 2006)). The State need only show that the defendant evaded arrest and created a risk of death or injury while doing so. Id.

Viewed in the light most favorable to the State, the evidence presented at trial established that the Appellant's flight created a risk of death or injury to innocent bystanders, pursuing law enforcement, or other third parties. Dash camera footage from both officers' vehicles showed the Appellant driving down the road at high speeds, running through a red light at an intersection, and crossing briefly into the oncoming lane as he drove. The Appellant passed multiple cars during the chase. Officer Jaggers testified that his speed exceeded 110 miles per hour during their pursuit. The Appellant then lost control of his vehicle and crashed into a utility pole in a parking lot, causing it to fall across the road. A risk of death or injury exists for surrounding drivers "in [the defendant's] proximity" when he operates his vehicle dangerously. Turner, 193 S.W.3d at 525. A rational trier of fact could have found based on the evidence from the officers' testimonies that the Appellant's driving created a risk of death or injury to the officers and bystanders around him during the pursuit. The evidence is therefore sufficient to sustain the Appellant's conviction, and he is not entitled to relief.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE

- 6 -